EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Nelson Daniel Centeno<br><br>Recurrido | Certiorari<br><br>2021 TSPR 133<br><br>207 DPR ____ |

Número del Caso: AC-2021-86

Fecha: 9 de septiembre de 2021

Tribunal de Apelaciones:

Panel X

Oficina del Procurador General:

Lcdo. Fernando Figueroa Santiago
Procurador General

Lcdo. Javier O. Sepúlveda Rodríguez
Subprocurador General

Lcdo. Omar Andino Figueroa
Subprocurador General

Lcda. Liza M. Delgado González
Procuradora General Auxiliar

Sociedad para Asistencia Legal
Abogado de la parte recurrida:

Lcdo. Luis A. Gutiérrez Marcano

Materia: Derecho Constitucional y Procedimiento Criminal - Solo es válida la instrucción que explique al Jurado que tanto el veredicto de culpabilidad como el de no culpabilidad debe ser unánime.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.               AC-2021-0086

Nelson Daniel Centeno

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

(Regla 50)

En San Juan, Puerto Rico, a 9 de septiembre de 2021.

Luego de la determinación de *Ramos v. Louisiana*[1] adoptada en *Pueblo v. Torres Rivera*,[2] nos corresponde dilucidar la validez de una instrucción al Jurado que alude a que el veredicto de *culpabilidad* tiene que ser unánime, pero, en cambio, uno *absolutorio* podría ser por mayoría de 9 miembros del Jurado.

Por los fundamentos que expondremos, resolvemos que solo será válida la instrucción que explique al Jurado que tanto el veredicto de *culpabilidad* como el de *no culpabilidad* deberá ser unánime.

---

[1] 140 S. Ct. 1390, 50 US __ (2020).

[2] 204 DPR 288 (2020).

I

Por hechos ocurridos el 4 de enero de 2016, el Ministerio Público presentó varias denuncias contra el Sr. Nelson Daniel Centeno (recurrido) en el Tribunal de Primera Instancia. Luego de los procedimientos correspondientes, al recurrido se le imputó la comisión de los delitos de escalamiento agravado, asesinato en primer grado, tentativa de asesinato e infracciones a la Ley de Armas.

Durante la celebración del juicio, el Ministerio Público presentó ante el Tribunal de Primera Instancia una *Moción solicitando instrucción al jurado*. En específico, y al amparo de la normativa establecida en *Ramos* y adoptada en *Torres Rivera,* el Ministerio Público solicitó que se le impartiera al Jurado la instrucción de que, en esencia, "todos deben estar de acuerdo y votar, de forma unánime, ya sea para encontrar culpable o no culpable al acusado".[3]

Por su parte, el recurrido se opuso a la instrucción sugerida por el Ministerio Público.[4] De entrada, aludió a que tanto nuestra Constitución como las Reglas de Procedimiento Criminal establecen la proporción de mayoría y que la norma pautada en *Ramos,* adoptada en *Torres Rivera,* se limitó a que el requisito de unanimidad es para veredictos de *culpabilidad.* En particular, manifestó que

---

[3] *Moción solicitando instrucción al jurado, Apéndice*, pág. 79.

[4] *Moción en oposición a "Moción solicitando (SIC) instrucción al jurado, para que se imparta instrucción al jurado", Apéndice*, págs. 81-86.

en *Torres Rivera* circunscribimos la controversia en determinar si, a la luz de *Ramos,* una condena dictada en virtud de un veredicto por mayoría en nuestra jurisdicción infringe las salvaguardas procesales inherentes al derecho fundamental a un juicio por Jurado que garantiza la Sexta Enmienda de la Constitución de Estados Unidos. Así, argumentó que determinamos que según *Ramos* se instituye el requisito de unanimidad para lograr una convicción.

En consecuencia, el recurrido propuso que se impartiera al Jurado la instrucción siguiente:

> Para que un veredicto de no culpabilidad sea válido, por lo menos nueve (9) de ustedes deben estar de acuerdo con el mismo. El veredicto para declarar no culpable al acusado, expresará si la mayoría es de 9 a 3, 10 a 2, 11 a 1, o por unanimidad. Por el contrario, para que un veredicto de culpabilidad sea válido, el mismo debe ser unánime, es decir, todos ustedes deben de estar de acuerdo con el mismo. El resultado de la votación se hará constar por el Presidente o la Presidenta del jurado en el formulario provisto por el Tribunal.[5]

Evaluados los planteamientos de las partes, el Tribunal de Primera Instancia emitió una Resolución en la que declaró "no ha lugar" la *Moción solicitando instrucción al jurado* presentada por el Ministerio Público. En lo pertinente, la determinación dispuso lo siguiente:

> Al requerir que se encuentre no culpable por unanimidad a un acusado, entendemos que estaríamos colocándolo en una posición donde tendría que demostrar su inocencia. En ese sentido, se depositaría en la defensa el cargo de la prueba, en tanto y en cuanto se debe convencer al jurado de la no culpabilidad. Sin embargo, quien por disposición legal tiene el peso de la prueba es el Ministerio Fiscal teniendo que demostrar la culpabilidad de un acusado

---

[5] Íd., pág. 84.

*más allá de duda razonable*. Es el responsable de presentar evidencia que produzca certeza o convicción moral en una conciencia exenta de preocupación o ánimo prevenido.

Tanto la jurisprudencia como la ley establece que el acusado no tiene obligación alguna de presentar prueba en su defensa y que el peso de la prueba no cambia en etapa alguna del proceso, pues descansa en su presunción de inocencia.

Siendo el Ministerio Fiscal quien posee el peso de la prueba está llamado a demostrar ante el jurado la culpabilidad de un acusado *más allá de duda razonable*, el cual se cumple al obtener un veredicto unánime, pues lograría convencer, dirigir la inteligencia y satisfacer la razón de las 12 personas del jurado. Así, se satisface el derecho a un juicio justo e imparcial, donde no abarque duda razonable de la comisión del delito.[6]

Acto seguido, el foro de instancia enfatizó que la norma pautada en *Ramos* se ciñó a los veredictos de *culpabilidad* al expresar:

Ahora bien, el veredicto al que se hace alusión es al de culpabilidad y no al de absolución. Sabido es que toda persona acusada de delito tiene un derecho constitucional a que se presuma su inocencia mientras no se pruebe lo contrario.

La unanimidad establece una protección procesal esencial del acusado ante un proceso penal, donde puede ser privado de su libertad. Al ser un derecho del acusado, es el Estado quien debe lograr convencer a los 12 jurados *más allá de duda razonable*.[7]

De esta manera, el Tribunal de Primera Instancia concluyó que exigir el requisito de unanimidad para un veredicto *absolutorio* iría en contra de los preceptos en ley. Por consiguiente, determinó instruir al Jurado, según solicitó el recurrido. Esto es, que para alcanzar un veredicto de *no culpabilidad*, por lo menos 9 personas del Jurado deben concurrir, por lo que el veredicto deberá

---

[6] Sentencia del Tribunal de Primera Instancia, *Apéndice*, págs. 92-94.

[7] Íd., pág. 93.

expresar si la mayoría es de 9 a 3, 10 a 2, 11 a 1 ó por unanimidad.[8]

Inconforme, el Procurador General acudió ante el Tribunal de Apelaciones mediante un recurso de *certiorari* y señaló que el tribunal de instancia erró al adoptar la instrucción para el Jurado propuesta por el recurrido de que el veredicto de *culpabilidad* tiene que ser unánime, pero que para uno de *no culpabilidad* sería suficiente por lo menos la concurrencia de 9 miembros del Jurado.[9]    En resumen, el Procurador General argumentó que, al amparo de la Constitución federal, un veredicto que incumpla con la exigencia de la unanimidad tanto para condenar como para absolver es constitucionalmente inválido. Así, concluyó que esa era la norma aplicable a nivel federal, "y es la norma que impera en Puerto Rico al activarse en nuestra jurisdicción la figura del Jurado de conformidad con la Sexta Enmienda y lo resuelto en Ramos v. Louisiana, *supra.*"[10]

Por su parte, el recurrido presentó un *Escrito en oposición*.[11] En esencia, argumentó que luego de *Ramos* el requisito de mayoría de votos para la absolución de nuestra Constitución y de las leyes pertinentes no había sido alterado o eliminado por ninguna enmienda

---

[8] Íd.

[9] Petición de *certiorari, Apéndice*, pág. 42.

[10] Íd., pág. 62.

[11] *Escrito en Oposición, Apéndice*, págs. 97-117.

constitucional o legislativa ni por declaración de inconstitucionalidad por un tribunal competente. Sobre este particular, el recurrido arguyó que:

> Es el Estado quien debe tener una segunda oportunidad para probar la culpabilidad de un acusado si en un primer proceso no ha logrado obtener un voto de culpabilidad por unanimidad. Sin embargo, un segundo proceso no debiera ser una segunda oportunidad para un acusado probar su inocencia cuando en el primer juicio hubo por lo menos nueve (9) jurados que concluyeron que el acusado era inocente.[12]

Una vez analizó los argumentos de las partes, el foro apelativo intermedio confirmó el dictamen del Tribunal de Primera Instancia. Según razonó el Tribunal de Apelaciones, la decisión del Tribunal Supremo federal en *Ramos* mediante la cual se estableció el requisito de unanimidad como un componente esencial del derecho fundamental al juicio por Jurado, se limitó exclusivamente a la unanimidad para veredictos de *culpabilidad*. Añadió que no procedía la aplicación de la Sexta Enmienda de forma restrictiva y sin apoyo jurídico. Además, enfatizó que tanto en *Ramos* como en *Torres Rivera* los tribunales solo resolvieron si la Sexta Enmienda requiere unanimidad para el veredicto de *culpabilidad* y al así adoptar este requisito dispusieron que la unanimidad del veredicto del Jurado operaba como un requisito sustancial para lograr una convicción. De manera que, según interpretó, se reconoció la unanimidad como un corolario natural de la imparcialidad que ordena la Sexta Enmienda.

---

[12] Íd., pág. 116.

Asimismo, precisó que la propuesta del Procurador General dejaría inoperantes las disposiciones medulares de nuestro ordenamiento jurídico que establecen que para rendir un veredicto deberán concurrir no menos de 9 de los 12 miembros del Jurado. En ese contexto, expuso que hemos reconocido que, en comparación con la Constitución federal, nuestra Carta Magna es de factura más ancha, por lo que conceder mayores protecciones a los acusados de las ofrecidas a nivel federal no contraviene la reciente jurisprudencia federal y estatal.

Por último, el foro apelativo intermedio coligió que aceptar la postura del Procurador General modificaba nuestro sistema de justicia criminal en la medida que le impone al acusado una carga más onerosa para demostrar su inocencia y minimizar el peso de la prueba que tiene que satisfacer el Estado en los casos criminales. Explicó que tal interpretación de *Ramos* se encuentra en tensión abierta con la presunción de inocencia que posee toda persona acusada en nuestra jurisdicción. Al respecto, puntualizó que en un proceso criminal lo que se juzga es la culpabilidad del acusado no su inocencia, por lo que sería un contrasentido tener que probar algo que se presume hasta que se derrote con prueba más allá de duda razonable.

Por todo lo anterior, concluyó que no existía margen para adoptar la interpretación del Procurador General, porque la fuente legal que utilizó como argumento para

sostener su contención -*Ramos*- no atendió la controversia que tenemos ante nuestra consideración. Es decir, la norma pautada en *Ramos* sobre el veredicto de unanimidad en una determinación de *culpabilidad* no se puede extender a los veredictos de absolución o *no culpabilidad.*

No conforme, el Procurador General acudió ante este Foro mediante un recurso de *Apelación* y señaló lo siguiente:

> Erró el Tribunal de Apelaciones al concluir en el caso de autos que para la culpabilidad el veredicto tiene que ser unánime, pero que para uno de no culpabilidad es suficiente por lo menos la concurrencia de nueve miembros del jurado.[13]

Ante la importancia y el interés público que reviste el caso ante nuestra consideración, procedemos a disponer de la controversia sin trámite ulterior al amparo de la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B. Pasemos, pues, a exponer el marco jurídico.

**II**

A.    <u>El Juicio por jurado</u>

Toda persona acusada de un delito grave tiene derecho a ser juzgado por un Jurado imparcial. Esta garantía es un derecho fundamental consagrado en la Sexta Enmienda de la Constitución de Estados Unidos y en la Constitución de Puerto Rico.

En particular, la Sexta Enmienda de la Constitución de Estados Unidos dispone lo siguiente:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an

---

[13] *Apelación*, pág. 9.

impartial jury of the state and district wherein the
crime shall have been committed, which district shall
have been previously ascertained by law, and to be
informed of the nature and cause of the accusation; to
be confronted with the witnesses against him; to have
compulsory process for obtaining witnesses in his favor,
and to have the assistance of counsel for his defense.[14]

Por su parte, y en lo pertinente, la Sec. 11 del Art.
II de la Constitución de Puerto Rico establece que:

[…]
En los procesos por delito grave el acusado tendrá
derecho a que su juicio se ventile ante un jurado
imparcial compuesto por doce vecinos del distrito,
**quienes podrán rendir veredicto por mayoría de votos**
en el cual deberán concurrir no menos de nueve.
[…].[15]

Han sido varias las ocasiones en que hemos sostenido
la validez de esta porción de la cláusula constitucional.[16]
Sin embargo, en esta ocasión la analizaremos a la luz de lo
resuelto en *Ramos,* pero en el contexto de los veredictos
unánimes de *no culpabilidad*. En otras palabras,
analizaremos el efecto implícito que provocó *Ramos* en el
fragmento de la disposición constitucional en controversia
respecto a los veredictos absolutorios. No obstante, y en
aras de exponer las razones que nos llevan a resolver este caso,
también debemos remontarnos a nuestra historia constitucional,

---

[14] Emda. VI, Const. EE. UU., LPRA, Tomo 1, ed. 2016, pág. 198.

[15] Art. II, Sec. 11, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 336.
Énfasis nuestro.

[16] Pueblo v. Casellas Toro, 197 DPR 1003, 1018-1019 (2017) (citando
Pueblo v. Báez Cintrón, 102 DPR 30 (1974); Pueblo v. Santiago Padilla,
100 DPR 782, 784 (1972); Pueblo v. Batista Maldonado, 100 DPR 936
(1972); Pueblo v. Hernández Soto, 99 DPR 768, 778-779 (1971); Pueblo
v. Aponte González, 83 DPR 511, 513-514 (1961); Jaca Hernández v.
Delgado, 82 DPR 402, 406-409 (1961); Fournier v. González, 80 DPR 262
(1958)).

desde antes -incluso- de la celebración de la Convención Constituyente.

Como sabemos, en *Ramos* el Tribunal Supremo de Estados Unidos evaluó un veredicto de *culpabilidad* cuya proporción decisoria fue la siguiente: 10 miembros del Jurado encontraron persuasiva la evidencia presentada por el estado de Luisiana en contra del acusado, mientras que 2 miembros creyeron que el Estado falló en probar la culpabilidad del acusado más allá de duda razonable, por lo que éstos votaron para absolver. Así, el acusado fue sentenciado a cumplir cárcel de por vida y sin derecho a probatoria.[17] Esto, distinto a lo establecido en 48 de los estados de la Unión que permiten que con un solo voto de un miembro del Jurado para absolver es suficiente para declarar un "*mistrial*".[18]

Estos hechos provocaron que, de manera definitiva, el Tribunal Supremo de los Estados Unidos resolviera si se requería un veredicto unánime para condenar a un acusado. Evaluados los planteamientos de las partes, el Tribunal Supremo federal estableció que la Sexta Enmienda -incorporada a los estados por vía de la Decimocuarta Enmienda- requiere un veredicto de unanimidad por parte

---

[17] *Ramos,* 140 S.Ct. en las págs. 1393-1394. Nótese que esa proporción decisoria tenía por propósito asegurar que los miembros del jurado Afro-Americanos quedaran excluidos. Esto es, "in order to ensure that African-American juror service would be meaningless". De igual forma, el Estado de Oregón permitía veredictos no unánimes tras el esfuerzo del Ku Klux Klan para diluir la influencia racial, étnica y religiosa en los miembros del Jurado. Íd., pág. 1394.

[18] Íd.

de los miembros del Jurado para lograr un veredicto de *culpabilidad*.

Así, y a pesar de que la Sexta Enmienda no menciona en su texto que el veredicto debe ser unánime, el Foro Supremo federal estableció que el concepto de "juicio por un jurado imparcial" incluye un requisito tan ampliamente extendido y aceptado como lo es la unanimidad.[19] De manera que un Jurado tiene que alcanzar un veredicto unánime para condenar.[20]

Sin embargo, es importante señalar que aunque el origen del requisito de unanimidad en los veredictos como una parte intrínseca del proceso penal federal no es del todo cierto, el requisito en sí aparenta remontarse a la Edad Media.[21] Particularmente, en *Ramos* el Tribunal Supremo federal señaló que el requisito de unanimidad se adoptó de Inglaterra en el siglo XIV como un derecho vital protegido por el derecho común.[22] Esto, a pesar de que en otros países de Europa la situación era distinta. Evidencia de esto, es las múltiples ocasiones donde el Tribunal Supremo ha reconocido que la unanimidad en los veredictos es un requisito fundamental del juicio por jurado en el ámbito federal.

---

[19] Íd., pág. 1396. ("If the term 'trial by an impartial jury' carried any meaning at all, it surely included a requirement as long and widely accepted as unanimity.").

[20] Íd. ("A jury must reach a unanimous verdict in order to convict.").

[21] Apodaca y. Oregón, 406 U.S. 404, 407 n.2 (1972).

[22] *Ramos*, 140 S.Ct. en la pág. 1395.

Ahora bien, es incuestionable que el requisito de la unanimidad de la Sexta Enmienda aplica tanto a los juicios estatales como a los federales por igual.[23] Por lo tanto, si el derecho a un juicio por jurado que emana de la Sexta Enmienda requiere un veredicto unánime para lograr una convicción en el tribunal federal, en virtud de la decimocuarta enmienda, no podrá requerir menos en el ámbito estatal.[24]

Posteriormente, y cónsono con lo anterior, atendimos *Torres Rivera* en el que resolvimos una controversia similar a la de *Ramos* y evaluamos si -a la luz de esa Opinión- una condena dictada en virtud de un veredicto no unánime transgredía las salvaguardas procesales inherentes al derecho fundamental a un juicio por jurado que garantiza la Sexta Enmienda. Examinada la controversia, razonamos que:

> Una lectura de la opinión emitida por el Tribunal Supremo de Estados Unidos en *Ramos v. Louisiana*, supra, devela que la unanimidad constituye una protección procesal esencial adicional que deriva del —y es consustancial al— derecho fundamental a un juicio por jurado consagrado en la Sexta Enmienda. El reconocimiento de la unanimidad como una cualidad intrínseca del derecho fundamental a un juicio por un jurado imparcial es vinculante en nuestra jurisdicción y obliga a nuestros tribunales a requerir veredictos unánimes en todos los procedimientos penales por delitos graves que se ventilen en sus salas.[25]

---

[23] Íd., en la pág. 1397. ("There can be no question either that the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally.").

[24] Íd. ("So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court".).

[25] *Torres Rivera*, 204 DPR en las págs. 306-307.

Ahora bien, aunque la institución del Jurado tiene su origen en el derecho anglosajón, no es menos cierto que en Puerto Rico la figura del Jurado estaba instaurada desde el primer gobierno civil a principios del Siglo XX, desde la aprobación de la *Ley estableciendo el Juicio por Jurado en Puerto Rico*[26] y la *Ley sobre procedimientos en los juicios por jurado*. Asimismo, se reconoció el derecho al juicio por Jurado en el Art. 185 del Código de Enjuiciamiento Criminal de Puerto Rico, el cual requería un **veredicto unánime**.[27] A esos efectos, se instituyó que "[u]n jurado constará de doce hombres que **deben estar unánimemente conformes en cualquier veredicto que dicte**". No obstante, esta disposición se enmendó posteriormente mediante la Ley Núm. 11 de 19 de agosto de 1948 para autorizar que los veredictos se obtuviesen por una mayoría de al menos nueve miembros del Jurado y, en 1952, el mínimo en la votación para sostener los veredictos se incluyó como parte de la Constitución de Puerto Rico.[28]

En ese sentido, en la sección siguiente, analizaremos las razones que tuvieron los delegados de la Convención Constituyente para adoptar ese razonamiento en nuestra Constitución.

---

[26] *Ley estableciendo el Juicio por Jurado en Puerto Rico* de 12 de enero de 1901, 34 LPRA ant. Sec. 462n, y *Ley sobre procedimientos en los juicios por jurado* de 31 de enero de 1901.

[27] Pueblo v. Casellas Toro, *supra*, pág. 1017.

[28] Íd., págs. 1017-1018.

B.   <u>El debate sobre el juicio por jurado en la Constituyente</u>

En nuestra función interpretativa de una cláusula constitucional es necesario que evaluemos la intención de nuestra Convención Constituyente. Sobre esto, hemos expresado que "para considerar el alcance de una cláusula constitucional puertorriqueña, aunque ésta cuente con una cláusula análoga en la Constitución de Estados Unidos, es nuestra obligación recurrir, como fuente primaria, al Diario de Sesiones de la Convención Constituyente".[29]

Durante el proceso de redacción y aprobación de nuestra Constitución, la Comisión de la Carta de Derechos, presidida por Don Jaime Benítez, presentó un Informe sobre las deliberaciones, las propuestas y el desempeño de la encomienda que recibió de parte de la Asamblea Constituyente. Igualmente, este anteproyecto manifestó las motivaciones para la redacción de la Carta de Derechos con el fin de alcanzar su eventual aprobación.[30] En lo ateniente al juicio emitido por un Jurado imparcial, su composición y el número de jurados que podrían rendir un veredicto, el Informe expresó lo siguiente:

> El texto fija permanentemente en doce el número de los jurados, respondiendo así a la tradición que ha prevalecido en el país y a la

---

[29] <u>Pueblo v. Serrano Morales</u>, 201 DPR 454, 494-495 (2018). *Véase, además*, Tatiana Vallescorbo Cuevas, *Interpretando La factura más ancha*, 46 Rev. Jur. UIPR 303, 327-330 (2012).

[30] 2 Diario de Sesiones de la Convención Constituyente de Puerto Rico, 1103(1952).

tradición del derecho común. Distinto a esa tradición[,] el veredicto podrá rendirse por la mayoría de votos que determine el poder legislativo, pero no podrá ser menor de nueve. Este es el sistema vigente por ley. Entendemos que la fórmula propuesta permitirá a la [Asamblea] Legislativa a aumentar el margen de mayoría hasta la unanimidad, si lo juzgare conveniente en el futuro.[31]

Con relación a lo anterior, en la Convención se recomendaron enmiendas a la sección 11 de la Carta de Derechos. En específico, se pretendió eliminar la frase original "quienes podrán rendir un veredicto por mayoría de votos que en ningún caso habrá de ser menor de nueve". Según entendía el asambleísta Ernesto Juan Fonfrías, una vez constituida la institución del Jurado, era a la Legislatura a quien le correspondía determinar el número de los miembros que lo compondrían.[32] Es decir, sugirió eliminar todo lo relacionado a la composición y al número de miembros del Jurado que debían concurrir para rendir

---

[31] 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico, Informe de la Comisión de la Carta de Derechos, págs. 2568-2569 (1961). Como detallaremos, pero resumimos en Pueblo v. Casellas Toro, *supra*, 1017-118:

> [P]revio a la aprobación de nuestra Constitución en 1952, la figura del Jurado ya estaba instaurada en la Isla. Particularmente, el primer gobierno civil bajo la soberanía americana estableció ese derecho en los casos criminales. Véase la Ley de 12 de enero de 1901 (34 LPRA ant. sec. 462 n.). Si bien en un principio los veredictos que rendían los Jurados en virtud de ese estatuto tenían que ser por unanimidad, unos años antes de la aprobación de la Constitución esa disposición se enmendó mediante la Ley Núm. 11 de 19 de agosto de 1948 (34 LPRA ant. secs. 611 n. y 811 n.), para autorizar que los veredictos se obtuviesen con la concurrencia de nueve miembros del Jurado.

[32] 3 Diario de Sesiones, pág. 1588. Cabe mencionar que la Escuela de Administración Pública de la Universidad de Puerto Rico coincidía con la postura de que la institución del Jurado debía permanecer -como hasta entonces- en manos de la Legislatura y no debía ser elevado a la consagración constitucional. Escuela de Administración Pública de la Universidad de Puerto Rico: La Nueva Constitución de Puerto Rico, pág. 174 (1954) (Ed. Fascsimilar 2005).

un veredicto.[33] De esta forma, según su parecer, la Asamblea Legislativa podría determinar si el veredicto "fuera por nueve, que fuera por mayoría de siete contra cinco…". Sobre este particular, Don Jaime Benítez confesó un temor y éste se circunscribía a que la jurisprudencia federal había resuelto que la expresión "juicio por jurado" quería decir "juicio por jurado con veredicto unánime".[34] Manifestó que eliminar el número de mínimo sería fijar indefectiblemente en 12 el número de jurados que tendrían que concurrir en un veredicto.[35] Asimismo, antes de ser derrotada esa propuesta del señor Fonfrías, el señor Benítez expresó que se oponía a la enmienda sugerida porque entendía que:

> [E]l veredicto inculpatorio de un jurado debe tener por lo menos un número de nueve votos en contra del acusado y no más, **tiene que tener por lo menos nueve votos en su contra o** debe tener nueve votos **en su favor**; pero no se debe inculpar a un acusado con una votación en su contra inferior a tres cuartas partes del total del jurado.[36]

Como vemos, en ninguna parte del debate de los constituyentes se mencionó siquiera la posibilidad de que la exigencia en el número de jurados para condenar pudiera ser distinta a lo requerido para absolver. Todo lo contrario, cuando se menciona el asunto se evidencia la intención de simetría en los veredictos.

---

[33] 3 Diario de Sesiones, pág. 1589. Véase III J. Trías Monge, Historia constitucional de Puerto Rico, Editorial UPR, pág. 195 (1982).

[34] 2 Diario de Sesiones, pág. 1589.

[35] Íd.

[36] Íd.

De hecho, en las crónicas de Don José Trías Monge se relató que antes de la aprobación de la Constitución, la Ley Foraker y la Ley Jones guardaban silencio sobre el juicio por jurado.[37] Pero, cuando se instituyó el primer gobierno civil[38] se celebró la primera sesión de la Asamblea Legislativa mediante la cual se aprobó, entre otros, la *Ley sobre procedimientos en los juicios por jurados*, Ley Núm. 1 de 31 de enero de 1901 (Ley de 1901). En esta Ley, e inmediatamente después que la sección 1 definiera al Jurado como "un cuerpo de hombres elegidos entre los habitantes de un determinado distrito y revestido de poder para conocer como Juez en cuestiones de hechos",[39] la sección 2 dispuso que "un jurado constará de doce hombres que deben **estar unánimemente conformes <u>en cualquier veredicto</u>** que emitan" sobre delitos graves.[40]

Luego de que esta norma imperara por 47 años, en 1948 se introdujo el veredicto por mayoría en nuestra jurisdicción. Así, se enmendó el Código de Enjuiciamiento Criminal para disponer que el "veredicto será por acuerdo

---

[37] III J. Trías Monge, *Historia constitucional de Puerto Rico*, Editorial UPR, pág. 194 (1982).

[38] Ley Foraker de 12 de abril de 1900, Documentos Históricos, LPRA, Tomo 1, ed. 2016. Véase III J. Trías Monge, <u>Historia constitucional de Puerto Rico</u>, Editorial UPR, pág. 195 (1982).

[39] *Ley sobre procedimientos en los juicios por jurados*, Ley Núm. 1 de 31 de enero de 1901 (Ley de 1901), pág. 122. 3 Diario de Sesiones, pág. 1587. Destacamos que el veredicto unánime se incorporó, además, en el Código de Enjuiciamiento Criminal de 1 de marzo de 1902.

[40] Íd. (Énfasis suplido). Es oportuno señalar que durante la Asamblea Constitucional se propuso mantener el lenguaje de la Ley de 1901 respecto a que los hombres que compondrían el Jurado serían elegidos, esto para rechazar la sugerencia de los "doce vecinos del distrito". 3 Diario de Sesiones, pág. 1587.

de no menos de tres cuartas partes (¾) del jurado".[41] De ahí que el Informe de la Comisión de la Carta de Derechos manifestara que el veredicto por mayoría era el sistema vigente por ley y que, a su vez, se facultaba a la Legislatura el poder aumentar el número de jurados que debían concurrir para un veredicto.[42] Sin embargo, y como vemos, lo que se enmendó fue el número mínimo de jurados necesarios para lograr un veredicto, y no la proporción entre ambos veredictos.

En conclusión, al momento en que se discutía la porción de la sección 11 de la Carta de Derechos que está en controversia, no se expuso en el seno de la Asamblea Constitucional la distinción entre veredictos, así como el número de jurados que tendrían que concurrir para rendir un veredicto *inculpatorio* o para uno *absolutorio*. Además, la redacción que al final se aprobó demostró que la inacción de la Asamblea Constitucional de distinguir los veredictos y la proporción decisoria por mayoría no se debió a ingenuidad o desconocimiento de nuestros delegados, pues el Informe y el debate son guías de

---

[41] Art. 2 de la Ley Núm. 11 de 19 de agosto de 1948 (34 LPRA ant. secs. 611 n.) (Ley de 1948). Según afirmó Trías Monge, la aprobación de la Ley de 1948 tuvo lugar porque el regreso de Don Pedro Albizu Campos aumentó la presencia de los nacionalistas, por lo que la enmienda limitó el derecho al juicio por jurado concebido desde antes de la aprobación de la Asamblea Constitucional así como se desautorizó el uso del Jurado en ciertos delitos graves. III J. Trías Monge, Historia constitucional de Puerto Rico, Editorial UPR, pág. 194 (1982). Sin embargo, en cuanto al veredicto por mayoría, en Pueblo v. Figueroa Rosa, 112 DPR 154, 160 (1982) reconocimos que la adopción de la proporción decisoria en la referida ley fue para "evitar que el aislado proceder de un solo miembro abortara la unanimidad y anulara el esfuerzo y labor colectiva del panel".

[42] 4 Diario de Sesiones, Informe, pág. 2570.

interpretación y es incuestionable que éstos revelan un trato igualitario para ambos veredictos. Por lo tanto, solo existe cabida para interpretar que, conforme a nuestra Constitución y la historia incluso previa a su aprobación, la proporción decisoria del veredicto es la misma tanto para la *culpabilidad* como para la *no culpabilidad*.

Precisamente esa falta de distinción entre ambos veredictos en la cláusula en cuestión y la facultad que emana de los diarios de la Convención Constituyente para - mediante legislación- aumentar la proporción decisoria de mayoría hasta la unanimidad, sujetó a la Legislatura al mismo equilibrio para ambos veredictos, ni más ni menos. De modo que, según explicado y para que la Asamblea Legislativa cumpliera con la disposición constitucional, el aumento de la proporción decisoria a la concurrencia de diez, once o doce jurados para el veredicto de *culpabilidad* sería igual para la aprobación de la *no culpabilidad*.

C.   Factura más ancha

Como es de conocimiento, "la aplicabilidad de un derecho constitucional federal constituye sólo el ámbito mínimo de ese derecho".[43] Es decir, Puerto Rico puede interpretar la Constitución para ampliar un derecho que rebose en una protección mayor de la reconocida por la

---

[43] Pueblo v. Díaz, Bonano, 176 DPR 601, 621 (2009).

Constitución federal.[44] A raíz de este principio es que hemos reconocido "que nuestra Carta de Derechos es de factura más ancha que la Constitución federal".   Sin embargo, la extensión de la factura más ancha a un derecho reconocido expresamente por la Constitución o el Tribunal Supremo federal no es de aplicación automática.

En *Pueblo v. Díaz, Bonano*,[45] adoptamos la norma interpretativa de la frase "factura más ancha" ideada por el exjuez asociado Antonio Negrón García en su disenso de *Pueblo v. Yip Berríos*,[46] quien expuso lo siguiente:

> ... *la antedicha "factura más ancha" es descriptiva, no prescriptiva.* No debe dar lugar, irreflexivamente, a un proceso mediante el cual la norma constitucional puertorriqueña se determina *mecánicamente*, tomando como base el grado de protección a la intimidad establecido por la jurisprudencia del Tribunal Supremo federal y luego ensanchándolo. Que nuestra jurisprudencia establezca un grado mayor de protección que la federal es quizás predecible, pero no es ni debe ser un pre-requisito.
>
> **Nuestra Constitución requiere**[,] no que automáticamente establezcamos una protección mayor que la federal, sino **una protección fundamentada en los principios que acoge nuestra propia Carta de Derechos.** *Si el razonamiento esbozado en la jurisprudencia de otras jurisdicciones nos convence, es perfectamente apropiado acogerlo.*[47]

En este contexto, la Sección 9 del Art. II de nuestra Constitución establece que:

> La enumeración de derechos que antecede no se entenderá en forma restrictiva ni supone la

---

[44] Íd.

[45] Íd.

[46] 142 DPR 422 (1997) (Negrón García, opinión disidente).

[47] Pueblo v. Díaz, Bonano, supra, pág. 624.

exclusión de otros derechos pertenecientes al pueblo
en una democracia, y no mencionados específicamente.

No obstante, es importante aclarar que lo establecido en esta Sección 9 solo es posible en la medida que de la propia Constitución exista el espacio para hacerlo, pues este Tribunal es intérprete y no creador.[48] Así, estamos impedidos, no solo esta Curia sino la Asamblea Legislativa, de ensanchar derechos que, desde el principio, nuestros forjadores claramente no quisieron extender.

En conclusión, a través de *Ramos* aplicado en *Torres Rivera*, el veredicto de *culpabilidad* que rendirá un Jurado tiene que ser unánime evitando así el violentar la Sexta Enmienda de la Constitución Federal. **Sin embargo, en el espectro de nuestra Ley Suprema los veredictos de *no culpabilidad* tienen que mantener la misma proporción decisoria para no quebrantar la Sec. 11 del Art. II de la Constitución de Puerto Rico.**

Con este análisis queda meridianamente claro que Ramos dejó sin efecto el texto constitucional que establece "veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve", salvándose únicamente la intención de igualdad o simetría proporcional en los tipos de veredictos.

---

[48] Pueblo v. Rivera Surita, 202 DPR 800, 812 (2019) (citando a Clínica Juliá v. Sec. de Hacienda, 76 DPR 509, 521 (1954)).

## III

El Tribunal de Primera Instancia permitió que se instruyera a los miembros del Jurado que para lograr un veredicto de *culpabilidad* este debía ser unánime, pero, en cambio, uno de *no culpabilidad* podía ser por mayoría de 9 miembros. Razonamos que impartir esa instrucción al Jurado es improcedente. Así, concluimos que los foros *a quo* erraron al permitirlo. Veamos.

Aunque ciertamente el caso de *Ramos* se circunscribió al escenario de un veredicto de *culpabilidad* no unánime, no nos queda duda de que esa decisión trastocó nuestra cláusula constitucional. **Ello, ocurre en la medida en que nuestros padres fundadores establecieron la misma proporción decisoria tanto para los veredictos de *culpabilidad* como a los de *no culpabilidad*.** Dicho de otro modo, en ningún momento los constituyentes bifurcaron o distinguieron el resultado de la deliberación del Jurado.

Como examinamos, nuestra cláusula constitucional no distingue entre el veredicto de *culpabilidad* y el de *no culpabilidad*, solo postula "veredicto por mayoría". No es razonable pensar que eso fue por ignorancia o desconocimiento de los redactores de nuestra Constitución. Nótese que, conforme a la Asamblea Constituyente, el Legislador había quedado facultado para aumentar el número de miembros del Jurado a rendir un veredicto hasta llegar a la unanimidad, **pero no la**

**autorizó a que estableciera distinciones en la proporción decisoria de los veredictos.**

En fin, al resolver *Ramos*, el Tribunal Supremo federal extendió una protección que obliga a los estados y a Puerto Rico con relación a los veredictos condenatorios. No obstante, y debido a que la redacción de nuestra cláusula constitucional no permite la existencia de desproporción decisoria en los veredictos, la obligatoriedad del veredicto *condenatorio* unánime establecido en *Ramos* en beneficio del acusado, obliga a su vez la unanimidad en el veredicto *absolutorio* en nuestra jurisdicción.

Antes de *Ramos*, una votación de menos de nueve votos para declarar culpable al acusado no era suficiente para lograr una convicción y causaba que el Jurado se disolviera sin lograr un veredicto (*hung jury*). En otras palabras, se disolvía el Jurado porque no se logró el número de votos requerido para que el Jurado emitiera un veredicto. Ese principio permanece inalterado. Lo único que cambia es el número de votos requerido para alcanzar un veredicto. Ahora, una votación que no sea unánime no es suficiente. Si los doce miembros del Jurado no se ponen de acuerdo, no se logra el número de votos requerido para que el Jurado emita un veredicto. La consecuencia sigue siendo la misma: disolver el Jurado (*hung jury*). Ante un tranque del Jurado por no lograr un veredicto unánime, el procedimiento no necesariamente

culmina, sino que el acusado podría ser juzgado nuevamente. Reiteramos, al igual que ocurre en toda la Nación, a nivel federal y estatal, esto no otorga una carga al acusado de probar su inocencia.

Por último, rechazamos por totalmente inmeritoria la postura de que requerir la unanimidad para lograr un veredicto *absolutorio* transferiría al acusado el peso de la prueba o que trastocaría la presunción de inocencia. En la esfera federal el requisito de unanimidad opera tanto para los veredictos de *culpabilidad* como para los *absolutorios,* quedando intacta la presunción de inocencia y el peso de la prueba atribuible al Estado.[49] Concluir lo contrario tendría el efecto de conferirle un alcance a la presunción de inocencia que no tiene en la jurisdicción federal de la que adoptamos la nuestra.

## IV

Por los fundamentos expuestos, y sin trámite ulterior de conformidad con la Regla 50 del Reglamento de este Tribunal, *supra*, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo expuesto en esta Opinión.

---

[49] En ese sentido, contrario a lo que adujo el Tribunal de Apelaciones, la realidad es que el peso de la prueba en un juicio criminal no se transfiere al acusado al requerir un veredicto unánime. Según establece nuestro estado de derecho vigente, el Ministerio Público sigue teniendo la carga de probar las acusaciones más allá de duda razonable, ya que el acusado se presume inocente. Precisamente, en la esfera federal, donde ha imperado tradicionalmente el requisito de unanimidad adoptado en *Ramos*, este precepto constitucional opera en dos direcciones: *culpabilidad* y *no culpabilidad*, sin requerirle al acusado probar su inocencia y sin afectar esta presunción.

Se dictará sentencia de conformidad.


                                    Erick V. Kolthoff Caraballo
                                           Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.

Nelson Daniel Centeno

    Recurrido

AC-2021-0086

SENTENCIA

En San Juan, Puerto Rico, a 9 de septiembre de 2021.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, y sin trámite ulterior de conformidad con la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo expuesto en esta Opinión.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente. La Jueza Presidenta Oronoz Rodríguez no interviene.

        Bettina Zeno González
    Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Nelson Daniel Centeno<br><br>Recurrido | AC-2021-0086 | <u>Certiorari</u> |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

En San Juan, Puerto Rico, a 9 de septiembre de 2021.

No es difícil sostener que en Puerto Rico son válidos los veredictos de absolución, con nueve o más votos. Por un lado, nuestra Constitución expresamente así lo dispone: el jurado estará compuesto por "doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve" (Artículo II, §11). Esto se codifica en la regla 112 de Procedimiento Criminal. *Ramos* solo atiende lo relativo a veredictos para condenar. Así, pues, se requiere veredicto unánime para condenar, por exigencia de *Ramos* y *Torres Rivera*. Pero como *Ramos* se limita a derecho constitucional del acusado a un veredicto unánime para condenarlo, no hay impedimento federal para hacer valer la disposición de veredicto absolutorio con nueve o más votos, que forma parte de la Carta de Derecho de la

Constitución de Puerto Rico. Para sostener que *Ramos* se aplica a todo tipo de veredicto, hay que hilar más fino y sostener que la cláusula de juicio por jurado en la Enmienda Sexta, tras *Ramos*, es un todo indivisible, no fraccionable, que exige unanimidad para todo tipo de veredicto. El problema es que la teoría de incorporación está pensada para expandir los derechos del acusado que reconoce el derecho estatal, no para reducirlos. Esto es, la Constitución de Puerto Rico le reconoce al acusado el derecho a un veredicto de absolución con nueve votos o más. Es difícil sostener que *Ramos* tiene el efecto de quitarle ese derecho al acusado.

Ponencia del Prof. Ernesto L. Chiesa Aponte de 27 de agosto de 2021, Análisis del Término 2020-2021 de Derecho Procesal Penal, Escuela de Derecho UPR, pág. 46.

El Tribunal Supremo federal abrió la puerta al reconocimiento de mayores garantías para los ciudadanos en el ámbito de veredictos de culpabilidad y la dejó abierta para que los tribunales estatales interpreten sus respectivas constituciones en la esfera de veredictos por mayoría para la absolución. Así lo hizo el Tribunal Supremo de Oregón, actuando proactivamente en defensa de las garantías individuales de los ciudadanos al validar el veredicto de no culpabilidad por mayoría. Lamentablemente, hoy una mayoría del Tribunal Supremo de Puerto Rico optó por cerrar esa puerta.

Por el contrario, este Tribunal debió realizar una lectura armoniosa de las protecciones autóctonas de la Constitución de Puerto Rico, junto con las garantías individuales reconocidas y pautadas en Ramos v. Louisiana, infra. En su defecto, la Mayoría, mediante la adopción de una visión restrictiva de los derechos individuales, impone una exigencia de unanimidad en los veredictos **absolutorios**. Ello, con un resultado que es incompatible con los pilares más básicos de nuestro Derecho penal y que ignora otras protecciones constitucionales.

Por entender que Ramos v. Louisiana, infra, no exige que un jurado rinda por unanimidad un veredicto absolutorio y que ello, a su vez, tampoco es cónsono con las garantías autóctonas de la constitución local, disiento con el proceder de la Mayoría y procedo a exponer las razones que sustentan mi criterio.

## I

En contra del Sr. Nelson Daniel Centeno (señor Centeno) penden varias acusaciones. Como parte de tal procedimiento judicial, el 25 de febrero de 2020, comenzó la selección del Jurado. No obstante, tal proceso se vio interrumpido por las medidas judiciales implementadas a causa del Covid-19. En el interín, el 20 de abril de 2020, el Tribunal Supremo de los Estados Unidos emitió su determinación en el caso de Ramos v. Louisiana, 590 US __ (2020). Mediante ésta, pautó que el veredicto unánime de **culpabilidad** es parte esencial del derecho constitucional

a un jurado imparcial, por lo que, en virtud de la Decimocuarta Enmienda del debido proceso de ley, los estados están obligados a implantarlo.

A raíz de ello, dentro del proceso criminal en contra del señor Centeno, el Estado solicitó al tribunal que se impartiera al Jurado una instrucción en particular: que el veredicto debía ser unánime, ya fuese para encontrar culpable o no culpable al acusado. En oposición, el señor Centeno argumentó que sólo se requería la unanimidad para los veredictos de culpabilidad, no así para los veredictos absolutorios los cuales eran válidos por mayoría.

Tras estudiar ambas posturas, el Tribunal de Primera Instancia determinó correctamente que no procedía la solicitud del Estado. Razonó que adoptar el requisito de la unanimidad para fines de la no culpabilidad vulneraría la presunción de inocencia que cobija a las personas acusadas y, a su vez, sería contrario a lo establecido en Ramos v. Louisiana, supra. De este modo, concluyó que un veredicto de no culpabilidad válido sólo requería un voto mayoritario de por lo menos nueve (9) personas.

En desacuerdo, el Estado, en esta ocasión a través del Procurador General, acudió ante el Tribunal de Apelaciones. Allí, planteó que la decisión del foro primario se alejaba del requisito de unanimidad establecido en Ramos v. Louisiana, supra. A ello, agregó que tal requisito tiene como norte proteger a las minorías en su participación como miembros del Jurado.

En su Escrito en oposición, el señor Centeno arguyó que Ramos v. Louisiana, supra, se limitaba a las determinaciones de culpabilidad, por lo que seguía vigente nuestro estado de derecho con respecto al voto por mayoría para fines de la no culpabilidad.

Finalmente, el Tribunal de Apelaciones expidió el recurso de certiorari ante su consideración y confirmó el dictamen recurrido. En primer lugar, aclaró que la norma de Ramos v. Louisiana, supra, adoptada por este Tribunal en Pueblo v. Torres Rivera II, 204 DPR 288 (2020), se limitaba a veredictos de culpabilidad y no procedía aplicarlo por analogía a veredictos de absolución. A su vez, destacó que nuestro sistema de justicia penal permite que se emitan veredictos por mayoría para las absoluciones sin contravenir la norma impuesta por el Tribunal Supremo federal. Añadió que tal interpretación era la más cónsona con nuestra Constitución y con la facultad de ofrecer mayores garantías a nuestros acusados que las ofrecidas a nivel federal.[50]

Insatisfecho, el Estado presentó un recurso de apelación ante este Tribunal, el cual fue acogido como una petición de certiorari y expedido.

A diferencia del criterio mayoritario de este Tribunal, sostengo que esta controversia nos brindaba la oportunidad idónea para reconocer, precisar y pautar que el

---

[50]El Hon. Juez Rodríguez Casillas emitió un Voto particular y de conformidad.

requisito constitucional de la unanimidad en la votación del Jurado establecido en Ramos v. Louisiana, supra, se circunscribe únicamente a los veredictos de culpabilidad y no así a los de absolución. No obstante, este Tribunal acogió una interpretación que es incongruente con la determinación del foro federal y con nuestro ordenamiento constitucional. Veamos.

## II

La Sexta Enmienda de la Constitución de los Estados Unidos reconoce expresamente el derecho de todo acusado a ser juzgado por un jurado imparcial. Emda. VI, Const. EE.UU., LPRA, Tomo 1.[51] La Constitución de Puerto Rico también reconoce tal derecho. En lo pertinente, la Sección 11 del Artículo II de la Constitución de Puerto Rico expresa que:

> En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile **ante un jurado imparcial** compuesto por doce vecinos del distrito, **quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve**. (Énfasis suplido). Art. II, Sec. 11, Const. PR, Tomo 1.

Tal disposición también se codificó en las Reglas de Procedimiento Criminal, 34 LPRA Ap. II. En específico, la

---

[51]En particular, ésta establece que: "En todas las causas penales, el acusado gozará del derecho a un juicio expedito y público, por un jurado imparcial del Estado y distrito en el cual haya sido cometido el delito, distrito que será previamente fijado de acuerdo a la ley; y a ser informado de la naturaleza y causa de la acusación; a carearse con los testigos en su contra; a que se adopten medidas compulsivas para la comparecencia de los testigos que cite a su favor y a contar con la asistencia de un abogado para su defensa". (Traducción suplida).

Regla 112 dispone que "[e]l jurado estará compuesto por doce (12) vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve (9)". Por su parte, la Regla 151 de tal cuerpo normativo establece que:

> Cuando el jurado hubiere rendido un veredicto, a requerimiento de cualquier parte o a instancias del propio tribunal tal veredicto deberá ser comprobado en cuanto a cada miembro del jurado. Si como resultado de esta comprobación se determinare que el veredicto no fue rendido, al menos, por nueve (9) miembros del jurado, se le podrá ordenar al mismo retirarse a continuar sus deliberaciones o podrá ser disuelto.

Ahora bien, aun cuando en la jurisdicción federal y en muchos de los estados la votación del jurado para condenar a un acusado o acusada debía ser unánime, ello no era exigible como un derecho fundamental ante los estados y los territorios. Es por ello que, tanto en nuestra jurisdicción[52]

---

[52]Véase <u>Pueblo v. Casellas Toro</u>, 197 DPR 1003 (2017). En tal caso, este Tribunal afirmó que, toda vez que el Tribunal Supremo federal había rechazado, hasta aquel entonces, reconocer el requisito de unanimidad en los veredictos del jurado como un derecho fundamental y ante la ausencia de tal exigencia en nuestro ordenamiento, "la validez constitucional de los veredictos por mayoría de nueve o más en nuestros tribunales está firmemente establecida". Íd., pág. 1019. Hasta principios del año pasado, "[p]arecería que la posición adoptada por nuestro Tribunal Supremo era una acertada y bien fundamentada. No obstante, el 20 de abril de 2020 la Corte Suprema de los Estados Unidos resolvió un caso que obligó a nuestro Tribunal Supremo a cambiar de opinión. Se trata del caso de <u>Ramos v. Louisiana</u>". J.A. Alicea Matías, <u>Los derechos de confrontación y juicio por jurado en tiempos de pandemia</u>, 60 Rev. Der P.R. 1, 19 (2020).

como en Luisiana y en Oregón, se permitían los veredictos por mayoría.[53]

Sin embargo, el año pasado el panorama constitucional del Derecho penal experimentó un cambio drástico con la llegada de Ramos v. Louisiana, supra. La controversia central de tal caso tuvo su génesis en, precisamente, tales postulados estatales que permitían que veredictos sin unanimidad de un jurado sirvieran como base para declarar culpable a un acusado en casos criminales.[54] Para el momento en que el Tribunal Supremo federal se expresó al respecto, los estados de Luisiana[55] y Oregón permitían fallos de culpabilidad basados en un veredicto de jurado de 10-2.[56] Ello, similar a Puerto Rico, donde era válida la votación por mayoría de 9-3.

Debido a ello, el peticionario en Ramos v. Louisiana, supra, fue hallado culpable por un veredicto de jurado divido 10-2 y, en consecuencia, sentenciado de por vida a prisión sin posibilidad de libertad condicional. Como parte

---

[53]Véase Apodaca v. Oregon, 406 US 404 (1972); Johnson v. Louisiana, 406 US 356 (1972).

[54]K. Stanchi, The Rhetoric of Racism in the United States Supreme Court, 62 B.C. L. Rev. 1251, 1272 (2021).

[55]Es importante destacar que "Louisiana voted to eliminate nonunanimous jury convictions for felony cases after 2019, leaving Oregon as the only state to retain them". Sixth Amendment-Right to Jury Trial- Nonunanimous Juries-Ramos v. Louisiana, 134 Harv. L. Rev. 520 (2020).

[56]R.C. Chandler, R.A. Enslen and P.G. Renstrom, Constitutional Law Deskbook: Jury unanimity, Sec. 5:10 (Supl. 2021).

de su defensa a nivel apelativo, el peticionario cuestionó la constitucionalidad de una convicción por un veredicto no unánime, así permitida por la ley estatal de Luisiana.

En lo que nos concierne, el Tribunal Supremo de Estados Unidos identificó inequívocamente la controversia ante su consideración como sigue: "[w]e took this case to decide whether the Sixth Amendment right to a jury trial —as incorporated against the States by way of the Fourteenth Amendment— requires a unanimous verdict **to convict** a defendant of a serious offense". (Énfasis suplido).[57] Con ello en mente, concluyó que "a jury must reach a unanimous verdict in order **to convict**"[58] y que "if the Sixth Amendment's right to a jury trial **requires a unanimous verdict to support a conviction** in federal court, it requires no less in state court". (Énfasis suplido).[59]

Dicho de otro modo, la Corte Suprema de los Estados Unidos resolvió que el veredicto unánime de culpabilidad era parte esencial del derecho constitucional a un jurado imparcial, por lo que tal exigencia era aplicable a los estados mediante la garantía del debido proceso de ley consagrada en la Decimocuarta Enmienda. Así, quedó establecido de forma contundente que "unanimity was clearly

---

[57]Ramos v. Louisiana, supra, pág. 1394.

[58]Íd., pág. 1395.

[59]Íd., pág. 1397.

necessary for state criminal convictions".[60] De este modo, se elevó a rango de derecho fundamental el veredicto unánime para hallar culpable a un acusado.

> Writing for a majority in some sections and a plurality in others, Justice Gorsuch **ruled that the Sixth Amendment requires conviction by a unanimous jury and that this right is incorporated against the states.** The Sixth Amendment promises a trial "by an impartial jury" but contains no further textual detail. To discern its requirements, Justice Gorsuch looked to English common law history, state practices in the Founding era, and opinions and treatises written soon after the Founding. **All sources confirmed that a jury must reach a unanimous verdict to convict a criminal defendant of a felony.** And while the version of the Sixth Amendment that was ultimately ratified did not explicitly guarantee unanimity, Justice Gorsuch argued that the omission could just as likely demonstrate lawmakers' attempt to avoid surplusage as it did the desire to abandon a well-established common law right. (Énfasis suplido).[61]

Resulta claro, pues, que el alcance de la determinación de Ramos v. Louisiana, se extendió únicamente a la unanimidad en un veredicto del Jurado para hallar culpable a un acusado. Nada en tal dictamen se refiere, o puede interpretarse como que se refiere, a aquellos veredictos de un Jurado para absolver a un acusado.

De hecho, en Pueblo v. Torres Rivera II, supra, este Tribunal reconoció la exigibilidad de la unanimidad para lograr convicciones válidas y, tal cual, implementamos por primera vez tal requisito constitucional en nuestra

---

[60]Sixth Amendment-Right to Jury Trial-Nonunanimous Juries-Ramos v. Louisiana, supra, pág. 522.

[61]Íd., págs. 521-22.

jurisdicción. Similar a Ramos v. Louisiana, supra, definimos la controversia dirimida como sigue:

> En particular, debemos determinar si, a la luz de esa opinión, una **condena dictada en virtud de un veredicto no unánime** en nuestra jurisdicción transgrede las salvaguardas procesales inherentes al derecho fundamental a un juicio por jurado que garantiza la Sexta Enmienda de la Constitución de Estados Unidos. (Énfasis suplido).[62]

Asimismo, destacamos que el razonamiento en Ramos v. Louisiana, supra, plasmó "cómo la exigencia de un veredicto unánime constituye una protección procesal fundamental para todo acusado de un delito grave".[63] En consecuencia, concluimos que "el dictamen del foro de Estados Unidos instituye la unanimidad del Jurado como un requisito de sustancia **para lograr una condena en un proceso penal**". (Énfasis suplido).[64]

Los parámetros de Ramos v. Louisiana, supra, resultan tan evidentes que, como cuestión de Derecho, ante un planteamiento similar al que consideramos hoy, la Corte Suprema de Oregón se rehusó a extenderlos, sin más, al veredicto de un jurado para absolver al acusado. En State v. Ross, 367 Or. 560 (2021), una corte apelativa estatal determinó que procedía instruir al Jurado que un fallo absolutorio tenía que ser unánime al igual que uno condenatorio conforme a Ramos v. Louisiana, supra.

---

[62]Pueblo v. Torres Rivera II, supra, pág. 291.

[63]Íd., pág. 300.

[64]Íd., pág. 301.

La Corte Suprema de Oregón rechazó tal interpretación y concluyó que "Ramos does not imply that the Sixth Amendment prohibits acquittals based on nonunanimous verdicts or that any other constitutional provision bars Oregon courts from accepting such acquittals".[65] Ello, pues, las raíces discriminatorias de los estatutos que permitían votos no unánimes por parte del Jurado no fueron, al fin y al cabo, el fundamento principal en la determinación del Tribunal Supremo federal, sino una crítica al precedente de Apodaca v. Oregon, supra. Por el contrario, la inconstitucionalidad del estatuto yacía en su incompatibilidad con la exigencia federal de que el veredicto del jurado fuese unánime para alcanzar una convicción. Por lo tanto, un razonamiento a la inversa con respecto a los posibles efectos discriminatorios en el uso de un veredicto no unánime para absolver resultaba erróneo como fundamento para exigir la unanimidad en tales casos.

En fin, un análisis detallado de Ramos v. Louisiana, supra, permitía sólo una conclusión, que fue a la que llegó el Tribunal Supremo de Oregón. "Oregon law, in conformance with the Sixth Amendment, requires a unanimous guilty verdict for all criminal charges and permits a not-guilty verdict by a vote of eleven to one or a vote of ten to two".[66] En términos más simples, "[g]uilty verdicts must be

---

[65]State v. Ross, supra, pág. 573.

[66]Oregon law requires unanimous guilty verdict for all criminal charges and permits not-guilty verdict by a vote

unanimous, which means that each and every juror must agree on a guilty verdict. But not-guilty verdicts may be nonunanimous. At least 10 jurors must agree on a not-guilty verdict. If you are divided nine to three, for example, you do not have a not-guilty verdict".[67]

## III

La síntesis del Derecho aplicable antes reseñada revela con meridiana claridad las delimitaciones de Ramos v. Louisiana, supra, con respecto a si la unanimidad es exigible en un veredicto de culpabilidad como un derecho fundamental ante los estados. A tales fines, el Tribunal Supremo federal emitió una determinación en la afirmativa que se ciñe estrictamente a lo relacionado a un veredicto de culpabilidad emitido por un Jurado, así sustentado por el sistema constitucional que impera.

No puede ser de otra forma, pues el derecho a un jurado imparcial que emana de la Sexta Enmienda de la Constitución de los Estados Unidos ampara estrictamente a **los acusados y las acusadas.** Por consiguiente, la elevación de tal protección al rango de derecho fundamental tuvo el único fin de favorecer a las personas acusadas y fortalecer las protecciones constitucionales que les cobijan en los procedimientos criminales que el Estado lleva en su contra. De hecho, así lo reconoció este Tribunal cuando, en Pueblo

---

of 11 to 1 or vote of 10 to 2, West's Criminal Law News NL48, vol.38, no.7 (2021).

[67]Oregon Uniform Criminal Jury Instructions: Veredict— Felony Case, UCrJI 1015.

v. Torres Rivera II, supra, pág. 306, expresó que: "[u]na lectura de la opinión emitida [por] el Tribunal Supremo de Estados Unidos en Ramos v. Louisiana, supra, devela que la unanimidad constituye una **protección procesal esencial adicional** que deriva del —y es consustancial al— derecho fundamental a un juicio por jurado consagrado en la Sexta Enmienda". (Énfasis suplido).

Así, ante la premisa de que Ramos **no** es extensible a los veredictos absolutorios, el Prof. Julio E. Fontanet Maldonado nos explica lo siguiente:

> Aquellos que tengan duda de lo anterior, deben preguntarse si, a la luz de la mencionada Sexta Enmienda y de lo resuelto en el caso de Ramos, sería inconstitucional una disposición de una Constitución o, inclusive, de un estatuto de un estado que establezca una mayoría para la determinación de no culpable. Es evidente que la respuesta tiene que ser negativa. No puede ser de otra forma. **Lo contrario sería afirmar que "el gobierno" tiene un derecho fundamental bajo la Sexta Enmienda para que se requiera la unanimidad. Ello es contrario a nociones básicas del derecho constitucional estadounidense, que establece que los derechos fundamentales son garantías a favor del acusado en contra del gobierno y no a la inversa.** (Énfasis suplido).[68]

Es, precisamente, la necesidad simultánea de proteger la integridad del procedimiento y salvaguardar los derechos de los acusados y las acusadas lo que impide interpretar que un veredicto de absolución requiere también unanimidad. Veamos.

---

[68]J. Fontanet Maldonado, La unanimidad y los condenados erróneamente, en: Punto de Vista, El Nuevo Día, 2 de septiembre de 2021, pág. 43.

De forma similar a cómo el Tribunal Supremo federal identificó los orígenes discriminatorios de estatutos como el que estuvo en pugna en Ramos v. Louisiana, supra, en mi Voto particular disidente en Pueblo v. Alers De Jesús, 2021 TSPR 56, reseñé cómo el asunto del veredicto por mayoría en Puerto Rico tuvo sus raíces en el discrimen por ideologías políticas. El motivo detrás de ello era simple: facilitar los fallos de culpabilidad en contra de los líderes y seguidores del movimiento independentista de aquel entonces. Tal estrategia, así dirigida a asegurar convicciones, evidentemente operaba en contra de los acusados y las acusadas, colocándolos en desventaja durante un procedimiento en el cual ya eran la parte débil. Por lo cual, el efecto ineludible de requerir la unanimidad en el Jurado para convicciones es proteger al acusado o la acusada de estrategias de esta índole.

Ahora bien, el hecho de que el voto mayoritario establecido en nuestra Constitución no favoreciera a los acusados y las acusadas para fines condenatorios no implica que no les beneficie para fines absolutorios. Una interpretación en contrario, aunque uniforme, desafía la lógica y conduce a un automatismo indebido que ignora la interpretación armoniosa de las restantes protecciones constitucionales. Ello, en primer lugar, porque el voto mayoritario para fines de absolución representa una protección más amplia y favorecedora para los acusados y las acusadas, quienes no tendrían que enfrentar un nuevo

proceso judicial penal en su contra de no prevalecer un veredicto unánime de no culpabilidad.

En segundo lugar, ello, a su vez, sería cónsono con la visión más abarcadora de nuestra Constitución con respecto a las garantías individuales. **No podemos olvidar que los derechos consagrados en la Constitución son de los acusados y las acusadas, no del Estado ni de los miembros del Jurado.** Aunque el sistema judicial penal reconoce y valida la importancia de la votación de cada miembro del Jurado, estamos impedidos de interpretar nuestro ordenamiento jurídico de modo que se ofrezca un manto absoluto de protección sobre tales votos a la expensa de las garantías y los derechos de las personas que están siendo procesadas criminalmente. A su vez, como vimos, los derechos fundamentales no están para cobijar al Estado, sino, por el contrario, a los ciudadanos frente al Estado.

Por lo cual, si bien el voto mayoritario fue introducido a nuestra jurisdicción tanto para la convicción como para la absolución, las razones discriminatorias que dieron vida a tal disposición se manifestaban en la intención de circunvalar los derechos de los acusados y las acusadas para asegurar sus convicciones, no sus absoluciones. Por consiguiente, el reconocer la vigencia y la validez de tal cláusula constitucional para fines de la absolución opera en contra de las intenciones nefarias que alguna vez fundamentaron su incepción. Esto, pues, indiscutiblemente, continuar el voto mayoritario de un

Jurado para la absolución beneficia a los acusados y las acusadas.

A mi juicio, tal interpretación obra en perfecta armonía con el principio fundamental de la presunción de inocencia y el estándar de prueba criminal que permite la convicción de una persona acusada sólo cuando se convence a un Jurado de la culpabilidad más allá de toda duda razonable.

Como sabemos, la primera oración de la Sección 11 de la Carta de Derechos de nuestra Constitución[69] reconoce que todo acusado y acusada goza de una presunción de inocencia.[70] Tal cláusula, cuya "fuerza normativa es sustancial por tratarse de un derecho fundamental",[71] tiene a su vez la intención de:

> [E]stablecer claramente que corresponde a la fiscalía demostrar, con prueba admisible, la culpabilidad de la persona acusada más allá de toda duda razonable. En esa dirección, la inocencia de la persona acusada constituye

---

[69]Como cuestión de Derecho, la Constitución de los Estados Unidos no cuenta con una disposición expresa análoga. En nuestro ordenamiento "la 'factura más ancha' se manifiesta en la inclusión expresa de la presunción de inocencia en nuestra Carta de Derechos". E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. U.P.R. 83, 104 (1996).

[70]En su obra más reciente, el profesor Farinacci Fernós nos indica que, contrario al resto de los derechos reconocidos en esta disposición constitucional, la presunción de inocencia "no surge directamente de la Sexta Enmienda de la Constitución federal", sino que, citando el Informe de la Comisión de la Carta de Derechos, nos recuerda que se trata de una norma previamente establecida y acogida en nuestros pronunciamientos judiciales. J. Farinacci Fernós, La Carta de Derechos, 2021, pág. 201.

[71]Íd., pág. 202.

el punto de partida en todo proceso criminal hasta que el Estado demuestre lo contrario, derrotando así la presunción. Como se expresó durante las deliberaciones de la Convención Constituyente: "La presunción más importante que nosotros conocemos bajo el sistema judicial americano es la presunción de inocencia".

El objetivo de esta cláusula es **descargar todo el peso probatorio, en cuanto a la culpabilidad de la persona acusada, en el ministerio público** e invalidar cualquier norma legal que sea contraria a este importante principio. (Énfasis suplido).[72]

Entiéndase, las consecuencias jurídicas del derecho a la presunción de inocencia son: (1) que "[e]l acusado no está obligado a presentar prueba en su defensa, pues puede descansar en la presunción de inocencia, cuyo efecto es colocar en el Pueblo la obligación de presentar evidencia y la obligación de persuadir", y (2) que "[e]l ministerio fiscal está obligado a demostrar la culpabilidad del acusado más allá de duda razonable; se requiere ese quantum de prueba para refutar la presunción de inocencia".[73] En consecuencia, conforme lo establece la Regla 110 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II: "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá". Es decir, que si el Estado no alcanza su quantum de prueba, prevalece la presunción de inocencia y procede la absolución del acusado o la acusada.

_____

[72]Íd.

[73]E.L. Chiesa, op cit., pág. 104.

**A la luz del vínculo directo entre la presunción de inocencia y la carga del Estado de rebatir tal presunción mediante la presentación de prueba de culpabilidad más allá de duda razonable, ¿por qué, entonces, es necesario que un Jurado se vea convencido en su totalidad de una ausencia de culpabilidad que ya se presume y que le corresponde al Estado derrotar?** Ciertamente, si no se alcanza un veredicto unánime de culpabilidad, la lógica dicta que el Estado falló en demostrar la culpabilidad más allá de duda razonable y, en consecuencia, prevaleció la presunción de inocencia cuyo efecto es la absolución de la acusación criminal. Por consiguiente, el no convencer a la totalidad de un Jurado con respecto a la culpabilidad implica, necesariamente, que persevera un estado de no culpabilidad que exige la absolución de los crímenes imputados.

Mediante su petición ante este Tribunal, el Estado nos invita a reestructurar la piedra angular de nuestro ordenamiento penal, imponiendo al Jurado el tener que convencerse en su totalidad de la ausencia de culpabilidad, la cual ya se presume, al mismo extremo en el que debe quedar convencido de la existencia de culpabilidad. Asimismo, se coloca a la fuerza sobre la persona acusada de delito la carga de demostrar su inocencia bajo el mismo estándar que le es requerido al Estado el probar la culpabilidad. Ello, con el efecto simultáneo de alivianar la responsabilidad probatoria del Ministerio Público para

eludir un voto de absolución. Tal pretensión es insostenible y estremece los propios cimientos de nuestro sistema penal.

Incluso, si para fines argumentativos acogiéramos la errónea suposición de que existe arraigo alguno para tal conclusión, como se sabe, los parámetros de un derecho constitucional federal representan sólo el ámbito mínimo aplicable de tal derecho.

En consecuencia, el Tribunal Supremo de un estado, incluyendo a Puerto Rico, tiene la facultad de interpretar que, bajo su Constitución, el derecho abarca dimensiones mayores de protección, lo que puede redundar en una garantía más abarcadora que la reconocida por la Constitución federal. Pueblo v. Díaz, Bonano, 176 DPR 601, 621 (2009). De esta forma, el alcance de una norma jurisprudencial federal, así aplicable a Puerto Rico, representa lo mínimo a lo que están obligados los tribunales de la Isla.[74]

Al proveer únicamente el contenido mínimo, la Corte Suprema federal no tiene ante sí los principios constitucionales y estatutarios propios de nuestro ordenamiento jurídico, los que precisamente nos permiten ampliar la protección e interpretación de tal contenido mínimo.[75] Además, en específico a esta controversia, debemos tener muy presente que, "[s]i bien la redacción de [la]

---

[74]E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Ed. Forum, Vol. I, 1991, pág. 39.

[75]Véase, Pueblo v. Ferrer Maldonado, 201 DPR 974 (2019) (Opinión disidente del Juez Asociado Estrella Martínez).

segunda oración de la Sección 11 tiene similitudes con la Sexta Enmienda, su articulación particular es de origen autóctono".[76]

En efecto, el derecho federal requiere la unanimidad en el jurado tanto para condenar como para absolver. Sin embargo, bajo la doctrina del contenido mínimo, sólo estamos atados a reconocer la unanimidad para fines de hallar a una persona culpable de un delito grave. Entiéndase, toda vez que continuar la tradición de aceptar veredictos por mayoría para la absolución representa una protección más amplia de los derechos constitucionales del acusado o acusada, el ordenamiento nos permite preservarla. En cambio, adoptar el requisito de la unanimidad para fines de la no culpabilidad no operaría a favor de los acusados o acusadas, sino que restringiría la protección que nuestra tradición penal ya les confiere.

Por ende, ante nuestra facultad para ampliar el contenido mínimo establecido por el Tribunal Supremo de los Estados Unidos, sostengo que el requisito de la unanimidad en la votación del jurado no debe extenderse a la absolución. Por el contrario, reconocer la validez y la vigencia del voto mayoritario para fines de la no culpabilidad implica profundizar e intensificar las garantías y los derechos constitucionales de los acusados y acusadas en nuestra jurisdicción. En palabras más simples: debimos reconocer más

---

[76]Farinacci Fernós, op cit., pág. 205.

y no menos.[77] Por cuanto, la conclusión más equilibrada es que, toda vez que los estados pueden conceder mayores derechos al mínimo que establece la Constitución federal, son válidos los veredictos por mayoría que pretendan conceder garantías benévolas a los acusados. Lamentablemente, la Mayoría de este Tribunal utiliza erróneamente la protección **adicional** que reconoció el Tribunal Supremo Federal para paradójicamente restringir las garantías básicas contenidas en la Constitución de Puerto Rico en el ámbito de los veredictos absolutorios.

Asimismo, es importante destacar que el requisito de unanimidad en el veredicto del Jurado para la convicción como elemento esencial del derecho al juicio por jurado consagrado en la Sexta Enmienda de la Constitución Federal, así reconocido en Ramos v. Louisiana, supra, se impuso a los estados a través de la Decimocuarta Enmienda federal,[78] es decir, a través de la doctrina de incorporación. Tal concepto se define como la figura constitucional mediante la cual las protecciones consagradas en la Carta de Derechos de la Constitución de los Estados Unidos se hicieron aplicables a

---

[77]Véase, Pueblo v. Alers De Jesús, supra, (Voto particular disidente del Juez Asociado Estrella Martínez, pág. 17.)

[78]Como cuestión de Derecho, "the Court [has] incorporated the various provisions of the Sixth Amendment, finding for the most part that the Fourteenth Amendment's Due Process Clause guaranteed defendants in state courts the same fundamental procedural protections guaranteed by the Framers to defendants in federal courts". S. Chhablani, Disentangling the Sixth Amendment, 11 U. Pa. J. Const. L. 487, 494 (2009).

los estados a través de la cláusula del Debido Proceso de Ley de la Decimocuarta Enmienda.[79] Previo a la existencia de la enmienda precitada y, en consecuencia, de la doctrina de la incorporación, la Carta de Derechos aplicaba sólo al gobierno y a las cortes federales.[80]

Ahora, siendo la doctrina de incorporación un límite al alcance del poder de los estados con respecto a los derechos civiles y las libertades que le amparan a los ciudadanos,[81]

---

[79]"Since the adoption of the Fourteenth Amendment to the United States Constitution, there has been a continuing debate as to whether it incorporates the Bill of Rights guarantees of the first eight amendments. While the Supreme Court has rejected the theory of absolute incorporation, it has held that through the fourteenth amendment certain of the "fundamental rights" of the first eight amendments place limitations upon state as well as federal exercise of power". D.G. Collins, The Incorporation Doctrine: Sixth Amendment Trial by Jury, 15 HOWARD L.J. 164 (1968).

[80]"The first eight amendments to the federal Constitution originally applied only to the federal government, and the possibility that the Fourteenth Amendment changed this structural principle was understood to have been rejected by the Supreme Court not long after the Amendment had been ratified. The so-called incorporation doctrine reversed that result and was by any measure one of the Warren Court's major legacies". J.Y. Stern, First Amendment Lochnerism & the Origins of the Incorporation Doctrine, 2020 U. ILL. L. REV. 1501, 1503 (2020).

[81]En los inicios de la incorporación total, "to make secure against invasion by the states the fundamental liberties and safeguards set out in the Bill of Rights" was how Justice Black characterized the "incorporationist" intentions of those in both houses of Congress who authored and sponsored the fourteenth amendment. […] Contending that the first section of the fourteenth amendment literally embodied-or was shorthand for-the totality of the wording, content and the essential procedures to implement the specific guarantees of the first eight amendments, Justice Black held that the amendment circumscribed the state authority in precisely the same manner as the Bill of Rights constrained federal authority". R.L. Cord, The Incorporation Doctrine and Procedural Due Process under the

y recordando que <u>Ramos v. Louisiana</u>, supra, sólo pautó la unanimidad en el veredicto para el jurado en caso de convicción, no es meritorio el argumento de que se incorporó en nuestro ordenamiento el requisito de un veredicto unánime para la absolución. Debido a todo lo discutido anteriormente, resulta un contrasentido que el Tribunal Supremo de Puerto Rico incorpore por la fuerza una vertiente restrictiva del derecho al juicio por jurado que no es cónsona con la suma del contenido mínimo de las protecciones federales, así establecido en <u>Ramos v. Louisiana</u>, supra, sumado a las garantías autóctonas de la constitución local. Ello, máxime, cuando la doctrina de incorporación está anclada en la protección del debido proceso de ley, la cual, a su vez, está intrínsecamente relacionada a la presunción de inocencia.

Bajo esta misma línea de argumentación con respecto a la constitución local, no podemos olvidar que nuestros constituyentes rechazaron expresamente la votación unánime del Jurado al momento de elaborar nuestra Constitución. Ello, a pesar de que ya existía tal unanimidad a nivel federal. Por lo cual, la interpretación más cónsona con nuestra propia Constitución es la que aquí planteo.

Es decir, un análisis sosegado de la controversia obliga a concluir que exigir la unanimidad para absolver constituiría una supresión de lo que dispone expresamente nuestra Constitución, lo cual de ninguna forma choca con

---

Fourteenth Amendment: An Overview, 1987 BYU L. REV. 867, 875-876 (1987).

lo dispuesto por el Tribunal Supremo federal o lo reconocido por este Tribunal en <u>Pueblo v. Torres II</u>, supra.[82]

Por otro lado, considero pertinente discutir las expresiones de los miembros de la Convención Constituyente al respecto.[83] Durante las discusiones que dieron vida a la Sección 11, Art. II de la Constitución de Puerto Rico, se deliberó con respecto a una enmienda, la cual fue derrotada eventualmente, para eliminar la frase "quienes podrán rendir veredicto por mayoría de votos que en ningún caso habrá ser menor de nueve".[84] La enmienda tenía como propósito que el número de miembros del Jurado para rendir un veredicto fuera dispuesto posteriormente por la Asamblea Legislativa. La discusión de esta enmienda fue la siguiente:

> Sr. BENITEZ: Con relación a la enmienda del compañero Fonfrías quiero decir que nuestro temor ha sido el de que, sobre la base de la jurisprudencia establecida en lo que toca a la expresión "juicio por jurado" en el derecho anglosajón, el concepto de "juicio por jurado"

---

[82]Como nos explica el Prof. Jorge Farinacci Fernós, el voto por mayoría establecido en nuestra Constitución quedó "parcialmente" desplazado por <u>Ramos v. Louisiana</u>, supra. "En términos prácticos, se privó a la Asamblea Legislativa de la facultad de permitir veredictos condenatorios que no sean unánimes". Farinacci Fernós, <u>op cit.</u>, pág. 208, esc. 495. Así, aunque menciona que no está del todo claro si aún opera la norma de mayoría en cuanto a los veredictos de absolución, en un próximo escolio recalca que, según <u>Ramos v. Louisiana</u>, supra, "es un requisito constitucional que un veredicto **condenatorio** sea unánime". (Énfasis suplido). Íd., pág. 209, esc. 497.

[83]3 Diario de Sesiones de la Convención Constituyente, 1939-1941 (1952).

[84]Íd., pág. 1939.

**quiere decir "juicio por jurado con veredicto unánime."** De suerte que acceder a la enmienda que propone el compañero Fonfrías sería sacarle mucho más de manos de la [Asamblea] Legislativa porque entonces quedaría, con arreglo a esta jurisprudencia, fijado indefectiblemente en doce el número de jurados que habrían de coincidir.

Sr. FONFRIAS: Mi idea, señor Presidente de la Comisión, es a los efectos de que en vez de aparecer en la constitución el número en que debe rendirse un veredicto por el jurado, se deje a la [Asamblea] Legislativa para que lo fije. O se diga ya, se fije si quiere. No ocurriría la situación que plantea el señor, el compañero Benítez. La [Asamblea] Legislativa puede determinar que fuera por nueve, que fuera por mayoría de siete contra cinco...

Sr. BENITEZ: Efectivamente, Sr. Fonfrías. Quiero decir que en tal caso estaríamos frente a una enmienda distinta. La enmienda no consistirá en eliminar lo que aquí se dispone en el sentido de que podría rendir veredicto por mayoría de votos que en ningún caso deberá ser menor de nueve, sino que sería otra cosa. Nosotros nos opondríamos también a cualquier modificación en ese sentido por entender que el veredicto inculpatorio de un jurado debe tener por lo menos un número de nueve votos en contra del acusado y no más, tiene que tener por lo menos nueve votos en su contra **o debe tener nueve votos en su favor;** pero que no se debe inculpar a un acusado con una votación en su contra inferior a tres cuartas partes del total del jurado.

Sr. FONFRIAS: Si el señor Presidente de la Comisión cree que no procedería la enmienda sino una enmienda diferente a la presentada por nosotros—la nuestra era que se eliminara totalmente y [se colocara] un punto después de "distrito"—podría entonces caber una enmienda de que la [Asamblea] Legislativa fijara el número de miembros del jurado que tuvieran que rendir un veredicto de la naturaleza que se está planteando aquí. Podría ser ésta la enmienda, sin determinarse en la constitución el número de miembros del jurado, en este caso nueve, que tiene que rendir ese veredicto. Pero de todas maneras quedaría eliminado totalmente el resto del párrafo, que nosotros queremos que se elimine de esa disposición.[85] (Énfasis suplido).

---

[85] Íd., págs. 1940-41.

El desarrollo de este debate revela el interés en evitar que se aplicara la equivalencia histórica entre el juicio por jurado y el juicio por jurado con veredicto unánime.[86] Entiéndase, la intención de los autores de nuestra Constitución fue clara: el ordenamiento penal que impera no exige un veredicto por unanimidad. Ante el estado actual del Derecho penal, la única interpretación cohesiva y conciliatoria es que ello sobrevive a través del veredicto para la absolución.

En fin, es evidente que la porción de nuestra Constitución que sufrió un impacto a raíz de Ramos v. Louisiana, supra, se restringe a la votación por mayoría para veredictos de culpabilidad, mientras que aún tiene vigencia la votación por mayoría para efectos de la absolución. Una interpretación en contrario suprimiría injustificadamente el texto de nuestra Constitución. Como vimos, nada en el Derecho justifica tal desviación.

Este Tribunal no debe hacer interpretaciones del ordenamiento jurídico penal a base de analogías, más aún cuando tal interpretación es en detrimento de las protecciones que amparan a los acusados y las acusadas. A ello debo sumar las consecuencias jurídicas que esto conlleva para las personas procesadas criminalmente, quienes tendrían que enfrentar un nuevo juicio, pues, en este escenario, aun cuando el Estado no logra probar la

_____

[86]Chiesa, supra, esc. 10, pág. 439.

culpabilidad más allá de duda razonable, se le concede otro turno más para lograrlo. Por el contrario, si se reconoce ese veredicto mayoritario de no culpabilidad, se protege a la parte más vulnerable de enfrentar, por segunda vez, todas las vicisitudes de un proceso criminal del cual, bajo el Derecho que rige, debió salir airoso en una primera ocasión.

Por consiguiente, entiendo que las instrucciones al Jurado deben ser al efecto de que, para la no culpabilidad de un acusado, pueden rendir un veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve (9). Por tanto, es permisible un veredicto 9-3, 10-2 y 11-1 en cuanto a la no culpabilidad. Para emitir un veredicto de culpabilidad, y solamente para ello, es necesario que el mismo sea por unanimidad. Concluir de esta forma obraría en favor de la justicia y constituiría una interpretación armoniosa que reconocería **todas** las garantías constitucionales que amparan a la ciudadanía en estos procesos.

**IV**

Como bien advierte el Decano de la Facultad de Derecho de la Universidad Interamericana, el Prof. Julio Fontanet Maldonado:

> De existir un consenso en Puerto Rico de que es deseable que también el veredicto de no culpable sea unánime, la única opción sería enmendar la Constitución, no darle una interpretación distorsionada al caso de Ramos ni a la razón de ser de lo dispuesto en nuestra Constitución. Claro, seríamos el único país en el

planeta que enmienda su Constitución para quitarse derechos.[87]

Hoy, una mayoría de este Tribunal hilvana un dictamen errado basado en un automatismo que le atribuye unos efectos inexistentes al precedente federal y los conduce a una aplicación paradójica del Derecho. Ello, porque el dictamen del Tribunal Supremo federal va en una dirección totalmente contraria a la que le imparte una mayoría de este Tribunal, **toda vez que se trata de una protección adicional y no una disminución de los derechos de los ciudadanos que enfrentan un juicio por jurado.** Además, se ejecuta una ruptura del hilo constitucional puertorriqueño en materia de indispensables garantías individuales, cuando se deja sin efecto la letra de la Constitución de Puerto Rico y se derogan los veredictos absolutorios por mayoría. Ante semejante acción, DISIENTO.

Luis F. Estrella Martínez
Juez Asociado

---

[87]J. Fontanet Maldonado, supra.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Peticionario

        v.

Nelson Daniel Centeno

    Recurrido

AC-2021-0086     *Certiorari*

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 9 de septiembre de 2021.

> The Constitution, of course, speaks only to what it takes to convict. Making it harder to convict is a standard part of constitutional criminal procedure doctrine, developed to ensure that innocent people avoid incarceration. But making it more difficult to acquit is no express part of any constitutional requirement and could, if taken to an extreme, violate the rights of an accused.[88]

Hoy este Tribunal, en un acto desvirtuado y distante del historial y claro texto de nuestra Carta Magna, *sub silentio*, enmienda la Constitución del Estado Libre Asociado de Puerto Rico y desplaza por

---

[88] Sherry F. Colb, *Should Acquittals Require Unanimity*, Veredict.Justicia.com, Should Acquittals Require Unanimity? | Sherry F. Colb | Verdict | Legal Analysis and Commentary from Justia (última visita, 2 de septiembre de 2021). La autora es profesora de la Escuela de Derecho de la Universidad de Cornell.

completo la regla de veredicto por mayoría de nueve (9) votos en juicios por jurado, que hasta la fecha gobernaba en nuestra jurisdicción. Sin anclaje jurídico alguno, esta Curia concluye que de una lectura de *Ramos v. Louisiana*, *infra*, así como de una presunta norma de simetría -- presumiblemente concebida por los delegados de nuestra Asamblea Constituyente --, el ordenamiento jurídico penal puertorriqueño requiere unanimidad tanto para el veredicto de culpabilidad como para el de no culpabilidad. Nada más lejos de la verdad, por lo que de dicho proceder enérgicamente disentimos.[89]

Y es que, si bien es cierto que el estado de derecho vigente en nuestra jurisdicción exige que el veredicto de culpabilidad en los procesos criminales sea por el voto unánime del jurado, de conformidad con lo pautado en *Ramos v. Louisiana*, *infra*, y *Pueblo v. Torres Rivera*, *infra*, igual de cierto es que el veredicto de no culpabilidad se logra con la concurrencia de al menos nueve (9) de las doce (12) personas que componen dicha institución, ello en virtud del claro texto del Artículo II, Sección 11, de nuestra Constitución, *infra*. Lo anterior, claro está, hasta tanto

---

[89] Al así hacerlo, también nos distanciamos del proceso innecesariamente acelerado mediante el cual esta Curia dispone de la controversia. Ello, pues, -- *motu proprio* -- este Foro activó el mecanismo excepcional contemplado en la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, para de forma atropellada, no solo trastocar la lógica del proceso, términos y turnos que de ordinario tienen las partes para presentar sus alegatos, sino también para acortar el término que tendrían los jueces y juezas de este Tribunal para estudiar la controversia y el expediente con el detenimiento y la profundidad que merece.

el Pueblo o la Asamblea Legislativa -- y no esta Curia --, si así lo entienden necesario, disponga otra cosa dentro de los parámetros constitucionales. Veamos.

                                I.

Los hechos medulares que dan margen al presente litigio no están en controversia. Allá para el 9 de enero de 2016, el Ministerio Público presentó varias denuncias en contra del señor Nelson Daniel Centeno (en adelante, "señor Centeno"), quien -- luego de que se le encontrara causa probable para el arresto y para acusarle por los delitos imputados -- optó por ejercer su derecho a tener un juicio por jurado.

Así las cosas, acercándose la fecha de culminación del referido juicio, el 18 de noviembre de 2020 el Tribunal de Primera Instancia celebró una vista para atender las instrucciones que se le impartirían al Jurado. En dicha vista, el Ministerio Público solicitó que se le instruyera al Jurado que el veredicto que en su día rindiera debía ser unánime, tanto para declarar la culpabilidad del señor Centeno, así como para su no culpabilidad. El Ministerio Público apoyó su petición en lo resuelto por este Tribunal en *Pueblo v. Torres Rivera*, *infra*, donde se adoptó la normativa establecida por el Tribunal Supremo de los Estados Unidos en *Ramos v. Louisiana*, *infra*.

En desacuerdo, la representación legal del señor Centeno se opuso a la solicitud de instrucción al Jurado

propuesta por el Ministerio Público. Al así hacerlo, argumentó en sala que un veredicto de no culpabilidad en donde concurran al menos nueve (9) de los doce (12) miembros del Jurado es válido a la luz de lo dispuesto en nuestra Constitución, en las Reglas de Procedimiento Criminal y en la jurisprudencia aplicable. A esos fines, destacó que la norma pautada en *Ramos* y *Torres* se limitó a requerir la unanimidad para lograr una convicción.[90]

Examinados los argumentos de las partes, el 7 de diciembre de 2020 el foro primario emitió una *Resolución* mediante la cual denegó la solicitud de instrucción al Jurado del Ministerio Público. Resolvió que en virtud de la presunción de inocencia y lo pautado en los casos *Ramos* y *Torres*, en Puerto Rico es válido un veredicto de no culpabilidad emitido por una mayoría de nueve (9) o más miembros del Jurado. De dicha determinación el Ministerio Público solicitó la reconsideración, la cual fue denegada.

Inconforme con lo dictaminado por el Tribunal de Primera Instancia, el 4 de enero de 2021 el Procurador

---

[90] El señor Centeno también sometió una moción escrita en oposición a la petición de instrucción hecha por el Ministerio Público. Allí, acentuó sus argumentos y propuso que, en su lugar, se impartiera la siguiente instrucción al Jurado:

> Para que un veredicto de no culpabilidad sea válido, por lo menos nueve (9) de ustedes deben estar de acuerdo con el mismo. El veredicto para declarar no culpable al acusado, expresará si la mayoría es de 9 a 3, 10 a 2, 11 a 1, o por unanimidad. Por el contrario, para que un veredicto de culpabilidad sea válido, el mismo debe ser unánime, es decir, todos ustedes deben de estar de acuerdo con el mismo. El resultado de la votación se hará constar por el Presidente o la Presidenta del jurado en el formulario provisto por el Tribunal. Véase, Apéndice de la Apelación, pág. 84.

General acudió al Tribunal de Apelaciones mediante el recurso de *certiorari*. En su escrito, adujo que el foro primario erró al adoptar la instrucción para el Jurado según fue propuesta por el señor Centeno, en cuanto a que el veredicto de culpabilidad tenía que ser unánime, mientras que para uno de no culpabilidad era suficiente con por lo menos la concurrencia de nueve (9) miembros del Jurado. En síntesis, expresó que, al amparo de la Sexta Enmienda de la Constitución de los Estados Unidos, *infra*, y lo resuelto en *Ramos v. Louisiana*, *infra*, un veredicto que incumpla con el requisito de unanimidad tanto para condenar, como para absolver, es constitucionalmente inválido.

Por su parte, el señor Centeno compareció ante el foro apelativo intermedio mediante *Escrito en oposición*. En éste, insistió en que *Ramos v. Louisiana*, *infra*, no alteró el requisito de mayoría de votos para el veredicto de no culpabilidad, quedando vigente lo pautado a esos fines en nuestra Constitución y en las Reglas de Procedimiento Criminal. Enfatizó, además, que ninguna enmienda constitucional o legislativa se había aprobado para cambiar lo dispuesto en la aludida cláusula constitucional en cuanto al veredicto de no culpabilidad. Posteriormente, el señor Centeno también presentó una *Moción informativa urgente* mediante la cual solicitó que ese foro tomara conocimiento de lo resuelto por el Tribunal Supremo del estado de Oregon

en *State v. Ross*, 367 Or. 560 (2021), en donde se resolvió una controversia similar.[91]

Analizados los escritos de ambas partes, el 6 de abril de 2021 el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual confirmó el dictamen emitido por el Tribunal de Primera Instancia. Coincidió en que *Ramos v. Louisiana*, *infra*, y *Pueblo v. Torres Rivera*, *infra*, solo atendieron la pregunta de si la Sexta Enmienda requería el voto unánime de los miembros del jurado para el veredicto de culpabilidad, por lo que rechazó extralimitar la norma pautada en los casos de referencia. En consecuencia, el foro apelativo intermedio resolvió que adoptar la propuesta del Procurador General tendría el efecto de "dejar inoperantes disposiciones medulares del ordenamiento jurídico local", toda vez que nuestra Constitución también permite un veredicto de no culpabilidad de 9-3, 10-2 y 11-1, y ello no contraviene la norma pautada en *Ramos v. Louisiana*, *infra*.[92]

---

[91] El Tribunal Supremo de Oregon dispuso que la ley de ese estado, de conformidad con la Sexta Enmienda de la Constitución de Estados Unidos, *infra*, requiere unanimidad para los veredictos de culpabilidad, a la vez que permite los veredictos de no culpabilidad por votación de once (11) a uno (1) o diez (10) a dos (2). Específicamente, concluyó que:

> ***Ramos* does not imply that the Sixth Amendment prohibits acquittals based on nonunanimous verdicts or that any other constitutional provision bars Oregon courts from accepting such acquittals.** […] The trial court erred in its determination that, in light of *Ramos*, the provisions of Oregon law permitting nonunanimous acquittals could not be applied. (Énfasis nuestro). *Íd.*

[92] *Sentencia* del Tribunal de Apelaciones, por voz de la ilustrada Magistrada Hon. Gina Méndez Miró, pág. 11.

Asimismo, el Tribunal de Apelaciones concluyó que nuestra Constitución es una de factura más ancha y que aceptar la postura del Estado también "tendría el efecto de modificar el sistema de justicia criminal al nivel de imponerle al acusado una carga más onerosa para demostrar su inocencia y minimizar el peso de la prueba que tiene que satisfacer el Estado en casos criminales", lo cual crea una clara tensión con la presunción de inocencia.[93] Por último, el foro apelativo intermedio puntualizó que lo obvio debía quedar claro por lo que sentenció que, "**en un proceso criminal lo único que se juzga es la culpabilidad del acusado, no su inocencia. La inocencia se presume <u>en todo momento</u>. No haría sentido tener que probar algo que se presume hasta que se derrote con prueba más allá de duda razonable**".[94] El Procurador General solicitó la reconsideración de dicha determinación, pero ésta fue denegada.

Insatisfecho aún, el Procurador General acude ante nos mediante el recurso de apelación. Señala que el Tribunal de Apelaciones erró al confirmar que para determinar la culpabilidad de una persona acusada de delito el veredicto tiene que ser unánime, mientras que para la no culpabilidad es suficiente la concurrencia de por lo menos nueve (9) de los doce (12) miembros del jurado.

---

[93] *Íd.*, pág. 12.

[94] (Subrayado en el original). *Íd.*, pág. 14.

Como ya mencionamos, una mayoría de este Tribunal -- luego de modificar los términos y el trámite que de ordinario se requiere para este tipo de litigio – erradamente optó por acceder a lo solicitado por el Procurador General.[95] De ese lamentable proceder, enérgicamente disentimos. Nos explicamos.

## II.

## A.

Como es sabido, el Artículo II, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico, dispone que "[e]n los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1.

Dicho mandato constitucional está, a su vez, instrumentado en la Regla 112 de Procedimiento Criminal, 34 LPRA Ap. II, la cual reza:

> REGLA 112. – JURADO; NÚMERO QUE LO COMPONE; VEREDICTO

---

[95] Cabe mencionar que el recurso de epígrafe se acogió y expidió como *certiorari*, por ser ese el mecanismo adecuado. Ahora bien, el 19 de junio de 2021 una mayoría de este Foro emitió una *Resolución* en la cual le concedió a ambas partes en el litigio el término de treinta (30) días para que -- simultáneamente -- presentaran sus alegatos. Lo anterior, como ya advertimos, es distinto al trámite con el que de ordinario se atienden estos asuntos. Así las cosas, y en atención a lo ordenado, tanto el Procurador General como el señor Centeno presentaron sus escritos, en los cuales reiteran los argumentos esgrimidos en los foros inferiores. De esa forma, y apoyados en la Regla 50 del Reglamento de este Tribunal, *supra*, una mayoría dispone del caso de epígrafe sin trámite ulterior.

> El jurado estará compuesto por (12) vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de (9).

Lo anterior, sin embargo, no siempre fue así. Aunque en nuestro País, desde principios del Siglo XX, toda persona acusada de delito grave, y en algunos menos grave, tienen derecho a ser juzgada por un jurado imparcial, no fue hasta finales de la década de los cuarenta que se introdujo la norma de veredicto por mayoría de nueve (9) votos. *Pueblo v. Casellas Toro*, 197 DPR 1003, 1021 (2017)(Oronoz Rodríguez, opinión concurrente); *Pueblo v. Narváez Narváez,* 122 DPR 80, 84 (1988); *Pueblo v. Laureano*, 115 DPR 477, (1984). Por tanto, previo a expresar nuestra posición con lo relacionado al presente caso, se hace necesario un breve resumen de los eventos histórico que dieron paso a la institución del juicio por jurado en nuestra jurisdicción.

### B.

Así pues, al explicar la génesis de la institución del juicio por jurado en Puerto Rico, el entonces delegado de la Asamblea Constituyente y pasado Juez Presidente de este Tribunal, Don José Trías Monge, nos comenta que "[l]a Ley Foraker y la Jones guarda[ban] silencio sobre el juicio por jurado, pero [que] el mismo se estableció por legislación desde 1901, limitado a causas por delitos graves". 3 José Trías Monge, *Historia Constitucional de Puerto Rico*, 194 (1982). Fue, entonces, tras la aprobación por el Congreso de los Estados Unidos de un gobierno civil para Puerto Rico,

que se comenzaron a adoptar una serie de decretos que -- aunque muy limitados -- estaban dirigidos a reconocerle ciertos derechos a los habitantes de la Isla frente al Estado. Véase José J. Álvarez, *La protección de los derechos humanos en Puerto Rico*, 57 REV. JUR. UPR 133, 135-138, 144-145 (1988).

En esa dirección, el 12 de enero de 1901 la entonces Asamblea Legislativa de Puerto Rico decretó la *Ley Estableciendo el Juicio por Jurado en Puerto Rico*, 1901 Leyes de Puerto Rico 1-2. Mediante dicha ley, los tribunales locales quedaron investidos de jurisdicción para atender juicios por jurado en aquellos escenarios donde una persona fuese acusada por un delito que aparejara como castigo la pena capital, o dos (2) o más años de privación de libertad en cualquier institución penal de la Isla. *Íd.*

Posteriormente, el 31 de enero de 1901 se aprobó la *Ley sobre Procedimientos en los Juicios por Jurado*. Con ésta última, se organizó la forma en que operarían los juicios por jurado en nuestra jurisdicción. A tales efectos, se dispuso que por jurado se entendería "un cuerpo de hombres" que consistiría de doce (12) personas, quienes deberían "estar unánimemente conformes en cualquier veredicto que emitan". 1901 Leyes de Puerto Rico 122.

Así también, el 1 de marzo de 1902 se adoptó la *Ley para Establecer en Puerto Rico un Código de Enjuiciamiento Criminal*, 34 LPRA ant. sec. 611 *et seq*. El Art. 185 del

mencionado cuerpo legislativo, leía que "[u]n jurado constará de doce hombres que deben estar unánimemente conformes en cualquier veredicto que dicten". 34 LPRA sec. 612 (ed. 1935). Desde ese entonces y hasta casi cincuenta (50) años después, esa sería la norma que gobernaría los asuntos relacionados al juicio por jurado en nuestra jurisdicción.

Empero, el 19 de agosto de 1948 se aprobó la Ley Núm. 11, conocida también como la *Ley del Veredicto por Mayoría*. La pieza legislativa de referencia tuvo el propósito de enmendar el Art. 185 del Código de Enjuiciamiento Criminal, *supra*, a los fines de disponer que "[e]n todos los casos en que, conforme a las leyes de Puerto Rico, un jurado deba rendir un veredicto, dicho veredicto será por acuerdo de no menos de tres cuartas partes (3/4) del jurado". 34 LPRA sec. 612 (ed. 1949).[96]

Más tarde, y tomando lo anterior como punto de partida, con la aprobación de nuestra Constitución en el año 1952, el derecho a juicio por jurado, así como la norma de veredicto por mayoría de nueve (9), se elevó a rango constitucional.[97] Tal norma, como sabemos, es la que se encuentra vigente hoy en día.

---

[96] De las actas de ambos cuerpos legislativos para aquel entonces, surge que los proyectos *P. de la C. 2* y *P. del S. 76*, los cuales dieron paso a la Ley Núm. 11, *supra*, se aprobaron sin mayor discusión. Véase, *Actas del Senado de Puerto Rico* y *Actas de la Cámara de Representante*, para las fechas febrero y julio de 1948 respectivamente.

[97] Al interpretar el precepto constitucional referente al juicio por jurado y veredicto por mayoría, esta Curia expresó que la razón práctica para que se cambiara la anterior norma de veredicto unánime por la de

En cuanto al alcance de lo antes dicho, precisa señalar aquí que, de una lectura de la discusión habida entre los delegados de la Asamblea Constituyente, queda claro que éstos conocían que el derecho anglosajón -- del cual adoptamos inicialmente el juicio por jurado -- requería unanimidad para el veredicto de culpabilidad. Aun así, la propuesta que prevaleció en dicho cuerpo -- arquitecto de nuestra Constitución -- fue la del veredicto por mayoría de no menos de nueve (9) votos, según contemplada originalmente por la Comisión de la Carta de Derechos. En esa línea, resulta pertinente citar *in extenso* la discusión recogida, sobre el particular, en el Diario de Sesiones:

> Sr. FONFRIAS: Señor Presidente y compañeros delegados: Una enmienda: […] Eliminar "quienes podrán rendir veredicto por mayoría de votos que en ningún caso habrá de ser menor de nueve." Se ha consagrado ya por la constitución la institución del jurado. **Tengo para mí que determinar el número de miembros del jurado para rendir un veredicto debe ser actuación legislativa.** Actualmente, por una ley se ha estado experimentando con que el veredicto sea rendido por una mayoría de nueve. Está en plan de experimentación. Hasta ahora está resultando. **No sabemos si este experimento pueda resultar a la larga, y entonces vendríamos obligados ¿a qué?, a enmendar la constitución, con todo el proceso de enmienda a la constitución, que es mucho más difícil que una enmienda que se pudiera hacer legislativamente.**
>
> […]

---

mayoría de no menos de nueve (9), fue "evitar que el aislado proceder de un solo miembro abortara la unanimidad y anulara el esfuerzo y la labor colectiva del panel". *Pueblo v. Figueroa Rosa*, 112 DPR 154, 160 (1982). Empero, Don Trías Monjes reveló que el cambio se debió, más bien, al "aumento en la actividad nacionalista a partir del regreso de Albizu[, lo cual] motivó otras limitaciones [al derecho de juicio por jurado]". Trías Monge, *op. cit.*

Sr. FONFRIAS: […] **Mi enmienda es a los efectos de que se elimine totalmente todo lo que conlleve fijar en la constitución el número de miembros del jurado que tenga que rendir un veredicto. Debe dejarse a la [Asamblea] Legislativa.** Pudiera ser que la [Asamblea] Legislativa considerare que fuera por mayoría, pudiera ser que la [Asamblea] Legislativa considerare que se mantuviera el principio de que fuera por los doce miembros del jurado. Y entonces se procedería a la enmienda de la constitución. **Me parece a mí que el procedimiento debe ser eminentemente legislativo en vez de congraciarlo en este momento en la constitución.**

[…]

Sr. BENITEZ: Con relación a la enmienda del compañero Fonfrías quiero decir que **nuestro temor ha sido el de que, sobre la base de la jurisprudencia establecida en lo que toca a la expresión "juicio por jurado" en el derecho anglosajón, el concepto de "juicio por jurado" quiere decir "juicio por jurado con veredicto unánime." De suerte que acceder a la enmienda que propone el compañero Fonfrías sería sacarle mucho más de manos de la [Asamblea] Legislativa porque entonces quedaría, con arreglo a esta jurisprudencia, fijado indefectiblemente en doce el número de jurados que habrían de coincidir.**

[…]

Sr. FONFRIAS: La enmienda sería la siguiente: En la misma página 4, línea 8, después de "distrito", "quienes podrán rendir veredicto por mayoría de votos, según se disponga por ley". Esa es la enmienda.

[…]

Sr. PRESIDENTE: Se va a someter a votación la enmienda del señor Fonfrías. Los que estén a favor se servirán decir que sí... Los que estén en contra se servirán decir que no... **Derrotada.** (Énfasis suplido). 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico, págs. 1588-1590 (ed. 1961).

Como se puede apreciar, con la anterior votación y en lo relacionado al derecho a juicio por jurado, la propuesta original de la Comisión de la Carta de Derechos -- presidida por el delegado señor Jaime Benítez -- se sostuvo en tres sentidos, a saber: 1) elevar a rango constitucional el derecho a juicio por jurado; 2) que el jurado rindiera un veredicto con la concurrencia de no menos de nueve (9) votos; y 3) que la Asamblea Legislativa, si en su día lo entendía conveniente, pudiese elevar el número de votos requeridos para el veredicto mediante legislación.

En cuanto a esto último, es menester señalar que en el *Informe de la Comisión de Carta de Derechos* se atendió la preocupación de algunos miembros de la Asamblea Constituyente, sobre la fórmula para rendir veredictos mediante la concurrencia de no menos de nueve (9) miembros del jurado. Específicamente, se dijo lo siguiente:

> El texto fija permanentemente en doce el número de los jurados, respondiendo así a la tradición que ha prevalecido en el país y a la tradición del derecho común. Distinto a esa tradición el veredicto podrá rendirse por la mayoría de votos **que determine el poder legislativo**, pero no podrá ser menor de nueve. Este es el sistema vigente por ley. **Entendemos que la fórmula propuesta permitirá a la [Asamblea] Legislativa aumentar el margen de mayoría hasta la unanimidad, si lo juzgare conveniente en el futuro.** (Énfasis suplido). 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico, Informe de la Comisión de la Carta de Derechos, pág. 2570 (ed. 1961).

Por último, y en lo relacionado al tema bajo estudio, conviene remitirnos también a la más reciente obra del

Profesor Jorge Farinacci Fernós, *La Carta de Derechos*. J. Farinacci Fernós, *La Carta de Derechos*, 1ra ed., San Juan, Ed. Universidad Interamericana de Puerto Rico, 2021, pág. 209. Allí, mediante cierto modelo analítico,[98] nos explica el Profesor Farinacci Fernós que el **propósito** del Artículo II, Sección 11, de nuestra Carta Magna, *supra*, "es posicionar la institución democrática del jurado entre el poder punitivo del Estado y las personas imputadas de delito". *Íd.*, pág. 209. Asimismo, nos comenta que el derecho a juicio por jurado según fue recogido en la Constitución, tiene una **intención dual**: 1) elevar dicho derecho a rango constitucional; y 2) distinguirnos de la tradición del derecho común, al ratificar la norma del veredicto por la mayoría de los votos que determine el poder legislativo, nunca menor de nueve (9). *Íd.* Añade el distinguido Profesor que, "el **objetivo** de esta disposición es controlar el poder del Estado de privar a una persona de su libertad"; de modo que la Sección 11 del Artículo II de la Carta de Derechos, *supra*, está relacionada con el derecho de libertad contenido en el Sección 7 de ese mismo artículo. *Íd.*

Ahora bien, establecido que en Puerto Rico por más de medio siglo ha regido la regla de veredictos por mayoría de

---

[98] El referido modelo está organizado en nueve (9) componentes, a saber: 1) texto; 2) origen de la disposición; 3) contenido comunicativo; 4) contenido normativo general; 5) estructura normativa; 6) naturaleza; 7) operación; 8) vínculo semántico o normativo con otras disposiciones constitucionales; y 9) una reformulación integrada del derecho. Para una explicación más detallada, referimos la lectura al Capítulo 2 de la citada obra, *La Carta de Derechos*. J. Farinacci Fernós, *op. cit.*, págs. 21-36.

nueve (9) o más, -- postulado constitucional que ha sido interpretado por parte de este Tribunal en numerosas ocasiones --,[99] es nuestro deber reconocer que el pasado año dicho precepto quedó alterado tras la decisión emitida por el Tribunal Supremo de los Estados Unidos en *Ramos v. Lousisina*, *infra*, y adoptada por este Tribunal en *Pueblo v. Torres Rivera*, *infra*.

### C.

Con lo anterior en mente, y en lo concerniente al juicio por jurado en los Estados Unidos, es menester recordar que la Sexta Enmienda de la Constitución federal dictamina que:

> [e]n todas las causas criminales, el acusado gozará del derecho a un juicio rápido y público, ante un jurado imparcial del estado y distrito en que el delito haya sido cometido, distrito que será previamente fijado por ley, a ser informado de la naturaleza y causa de la acusación; a carearse con los testigos en su contra; a que se adopten medidas compulsivas para la comparecencia de los testigos que cite a su favor y a la asistencia de abogado para su defensa Enmda. VI, Const. EE.UU., LPRA, Tomo 1.[100]

---

[99] Véase, *Pueblo v. Casellas Toro,* 197 DRP 1003, 1019 (2017) ("no hay duda de que en los tribunales […] de Puerto Rico es válido un veredicto de culpabilidad en el que concurran, como mínimo, nueve miembros del Jurado"); *Pueblo v. Báez Cintrón*, 102 DPR 30, 34 (1974) ("reiteramos nuestra posición reconociendo autonomía a Puerto Rico dentro de su relación política con los Estados Unidos para adoptar esa norma. Ratificamos una vez más la validez de veredictos por mayoría de 9 ó más"); *Pueblo v. Batista Maldonado*, 100 DPR 936 (1972); *Fournier v. González*, 80 DPR 262, 266 (1958) ("En los debates constitucionales se tuvo en cuenta el desarrollo peculiar de la institución del juicio por jurado en la administración de nuestra justicia criminal. Se consideraron las ventajas y desventajas de dicha institución y sólo se incorporó una garantía limitada que se extiende únicamente a los 'delitos graves' y que no incluye el principio de la unanimidad").

[100] In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature

Adviértase que la Constitución federal, distinto a la nuestra, no incorpora un requisito explícito en cuanto al número de votos necesarios para un veredicto. Sin embargo, el Tribunal Supremo de los Estados Unidos ha establecido los contornos de dicha protección mediante interpretación jurisprudencial e histórica.

En esa dirección, desde *Duncan v. Louisiana*, 391 US 145 (1968), el máximo foro judicial federal determinó que el derecho a juicio por jurado establecido en la Sexta Enmienda es fundamental y extensivo a los estados por medio de la Decimocuarta Enmienda. Con ese reconocimiento, posteriormente se cuestionó si el voto unánime, que históricamente se había requerido en el ámbito federal, era extensivo a los juicios por jurado en los estados.

En *Apodaca v. Oregon*, 406 US 404 (1972), el Tribunal Supremo de los Estados Unidos consideró si un veredicto de culpabilidad por mayoría violaba el derecho fundamental a juicio por jurado establecido en la Sexta Enmienda.[101] Mediante una pluralidad de voces ese Foro emitió su Opinión.

En el referido caso, por un lado, cuatro jueces del máximo foro judicial federal estuvieron conforme con la determinación de que el voto unánime no era un requisito

---

and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. *Íd*.

[101] Véase, también, *Johnson v. Louisiana*, 406 US 356 (1972), decidido en la misma fecha que *Apodaca v. Oregon*, *supra*.

constitucional, tal como no lo era la composición de un jurado con doce (12) miembros. *Íd.,* pág. 406. En cambio, otros cuatro jueces del Tribunal Supremo federal disintieron por entender que la Sexta Enmienda exigía un voto unánime del jurado y que dicho requisito es extensivo a los estados por medio de la Decimocuarta Enmienda.

No obstante, y siendo el voto decisivo al concurrir, el Juez Powell señaló que la Sexta Enmienda de la Constitución de los Estados Unidos exigía unanimidad en los juicios federales, pero no así en los estatales. *Íd.*, págs. 371-372 (Powell, opinión concurrente). Véase, además, E. L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: etapa adjudicativa*, 1ra ed., Puerto Rico, Ed. SITUM, 2018, págs. 437-438. A raíz de esa determinación, se estableció la norma de que en los estados no existía un requisito de veredicto por voto unánime en los juicios por jurado.

La determinación en *Apodaca* quedó entonces vigente por aproximadamente medio siglo. Lo anterior, debido a que, tan reciente como el pasado año, el máximo foro judicial federal volvió a enfrentarse a la pregunta de si el derecho a juicio por jurado y la Sexta Enmienda -- incorporado a los estados por medio de la Decimocuarta Enmienda -- admitía veredictos de culpabilidad que no fuesen unánimes en los casos penales que se ventilaran en las cortes estatales.

Así, en *Ramos v. Louisiana*, 590 US _ (2020), tras un cuidadoso y detallado análisis histórico sobre la Sexta

Enmienda y el derecho a juicio por jurado garantizado en ella, el Tribunal Supremo de los Estados Unidos revocó *Apodaca v. Oregon*, *supra*. *Íd.*, págs. 4-6. Dicho Foro, fundamentó su determinación en que *Apodaca* ignoraba el entendido histórico del derecho a juicio por jurado imparcial,[102] al igual que los orígenes racistas y discriminatorios de las leyes en controversia, entre otras razones. *Íd.*, págs. 3-6.

En lo concerniente al caso de autos, el máximo foro judicial federal concluyó que, del texto y estructura de la Constitución federal claramente sugerían que el término *juicio por jurado imparcial* acarreaba un significado en cuanto a contenido y requisitos; siendo uno de eso requisitos la unanimidad, es decir:

> **Wherever we might look to determine what the term "trial by an impartial jury trial" meant at the time of the Sixth Amendment's adoption—**whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—**the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.**
>
> The requirement of juror unanimity emerged in 14th century England and was soon accepted as a vital right protected by the common law. **As Blackstone explained, no person could be found <u>guilty</u> of a serious crime unless "the truth of every accusation ... should ... be confirmed by**

---

[102] En cuanto al entendido histórico, el máximo foro judicial federal recordó que el texto propuesto para la Sexta Enmienda en cierto momento expresaba que se requería unanimidad para la convicción ("The trial of all crimes [...] shall be by an impartial jury of freeholders of the vicinage, with the **requisite of unanimity for conviction**, of the right of challenge, and other accustomed requisites [...]". (Énfasis suplido). 1 Annals of Cong. 435 (1789)), pero que ese requisito estaba tan claramente incluido en el derecho a juicio por jurado imparcial que los senadores de aquel entonces decidieron eliminarlo, pues resultaba innecesario. *Ramos v. Louisisna*, *supra*, pág. 1400.

> **the unanimous suffrage of twelve of his equals and neighbors, indifferently chosen, and superior to all suspicion.**" (Énfasis suplido). *Íd.*, pág. 1395, citando a 4 W. Blackstone, *Commentaries on the Laws of England* 343 (1769).

De esta forma, el máximo foro judicial federal sentenció que las dos (2) leyes impugnadas -- la del estado de Luisiana y la de Oregon, que permitían la convicción por mayoría -- eran contrarias a la Sexta Enmienda de la Constitución de Estados Unidos. *Íd.*, pág. 14. En consecuencia, el Tribunal Supremo de los Estados Unidos dictaminó que, "**if the Sixth Amendment's right to a jury trial requires a unanimous verdict <u>to support a conviction</u> in federal court, it requires no less in state court.**" (Énfasis y subrayado suplido). *Íd.*, pág. 7.

Precisa señalar aquí que, posteriormente, la norma pautada en *Ramos v. Louisiana*, *supra*, como ya mencionamos, fue incorporada en nuestra jurisdicción a través del caso *Pueblo v. Torres Rivera*, 204 DPR 288 (2020). Al respecto, este Tribunal, al disponer del precitado caso, señaló que:

> Una lectura de la Opinión emitida el Tribunal Supremo de Estados Unidos en *Ramos v. Louisiana, supra,* devela que la unanimidad constituye una **protección procesal esencial [para la persona acusada]** que deriva de -y es consustancial a- el derecho fundamental a un juicio por jurado consagrado en la Sexta Enmienda de la Constitución de Estados Unidos. El reconocimiento de la unanimidad como una cualidad intrínseca del derecho fundamental a un juicio por un jurado imparcial es vinculante en nuestra jurisdicción y obliga a nuestros tribunales a requerir veredictos unánimes en todos los procedimientos penales por delitos graves que se ventilen en sus salas. (Énfasis suplido). *Íd.*, págs. 306-307.

Así las cosas, de conformidad con lo pautado en esa ocasión, en el mencionado caso ordenamos la celebración de un nuevo juicio y advertimos que en virtud de la nueva norma establecida en *Ramos v. Louisiana*, *supra*, **"para lograr una condena**, el jurado debía rendir un veredicto unánime"**. (Énfasis suplido). *Íd.*, pág. 307.

Es pues, a la luz de la normativa antes expuesta, que procedemos -- desde el disenso -- a atender la controversia de epígrafe.

IV.

Como adelantamos, en el presente caso nos corresponde evaluar si lo resulto por el Tribunal Supremo de los Estados Unidos en *Ramos v. Louisiana*, *supra*, y adoptado en nuestra jurisdicción en *Pueblo v. Torres Rivera*, *supra*, desplazó por completo la norma del veredicto por mayoría recogida en el Artículo II, Sección 11, de nuestra Constitución e incorporada en la Regla 112 de Procedimiento Criminal, *supra*. Específicamente, debemos evaluar si es acertado el señalamiento del Procurador General de que el foro apelativo intermedio erró al confirmar que para el veredicto de culpabilidad se requiere unanimidad, mientras que para el de no culpabilidad es suficiente la concurrencia de por lo menos nueve (9) miembros del jurado. No tiene razón.

**Y es que, si bien -- del análisis antes expuesto -- queda patentemente claro que nuestra cláusula constitucional sobre juicio por jurado en el ámbito penal,**

"**quedó <u>parcialmente</u> desplazada por la decisión del Tribunal Supremo federal en *Ramos v. Louisiana*, supra. [Pues, en] términos prácticos se privó a la Asamblea Legislativa de la facultad de permitir <u>veredictos condenatorios</u> que no sean unánimes**",[103] **igual de claro ha quedado que, la cláusula constitucional que permite que en los juicios por jurado pueda rendirse un veredicto de no culpabilidad por mayoría de votos en el cual deberán concurrir no menos de nueve (9), y el texto de la Regla 112 de Procedimiento Criminal, *supra*, mantienen toda su vigencia.**[104] Eso es así, pues dichas disposiciones no se han enmendado, derogado, ni declarado en su totalidad contrarias a la Sexta Enmienda de la Constitución federal. En ese sentido tanto el Artículo II, Sección 11, de de nuestra Constitución, *supra*, como la Regla 112 de las de Procedimiento Criminal, *supra*, gobiernan el asunto de epígrafe en cuanto a la controversia sobre el veredicto de no culpabilidad.

---

[103] (Énfasis y subrayado nuestro). Farinacci Fernós, *op. cit.*, pág. 208, escolio 495.

[104] Además, y "[a]quellos que tengan duda de lo anterior, deben preguntarse si, a la luz de la mencionada Sexta Enmienda y de lo resuelto en el caso de Ramos, sería inconstitucional una disposición de una Constitución o, inclusive, de un estatuto de un estado que establezca una mayoría para la determinación de no culpable. Es evidente que la respuesta tiene que ser negativa. No puede ser de otra forma. Lo contrario sería afirmar que "el gobierno" tiene un derecho fundamental bajo la Sexta Enmienda para que se requiera la unanimidad. Ello es contrario a nociones básicas del derecho constitucional estadounidense, que establece **que los derechos fundamentales son garantías a favor del acusado en contra del gobierno y no a la inversa**". (Énfasis en el original). Véase, Julio Fontanet, *La unanimidad y los condenados erróneamente*, elnuevodía.com, **La unanimidad y los condenados erróneamente - El Nuevo Día (elnuevodia.com)** (última visita, 2 de septiembre de 2021).

Como explicamos anteriormente, el poder legislativo -- que fue a quien la Asamblea Constitucional le delegó la facultad de aumentar el mínimo de votos requeridos para un veredicto --, mediante legislación puede implementar la norma de la unanimidad para los veredictos de no culpabilidad. **No obstante, a la fecha, eso no ha ocurrido.**

Por el contrario, actualmente sí está ante la consideración de la Asamblea Legislativa el *P. de la C. 283*, para entre otras, enmendar la Regla 112 de Procedimiento Criminal para que lea como sigue:

> REGLA 112. – JURADO; NÚMERO QUE LO COMPONE; VEREDICTO
>
> El jurado estará compuesto por (12) vecinos del distrito, quienes **podrán rendir <u>veredicto de no culpabilidad</u> por <u>mayoría</u>** de votos en el cual deberán concurrir no menos de (9). **Para emitir un <u>veredicto de culpabilidad</u>, será necesario que este sea por <u>unanimidad</u>**.

Es decir, un proyecto de ley que tiene como único propósito el atemperar las Reglas de Procedimiento Criminal, *supra*, con lo resuelto en *Ramos v. Louisiana*, *supra*, y nada más.[105] A todas luces, un paso en la dirección correcta.

---

[105] De la Exposición de Motivos del proyecto de referencia surge que:

> […] al declararse como inconstitucionales las convicciones criminales por jurado que no sean unánimes, esto tiene como consecuencia anular la disposición constitucional en Puerto Rico que permite convicciones en las que deben concurrir no menos de nueve (9) jurados.
>
> Por tanto, estimamos apropiado atemperar el estado de derecho de Puerto Rico con la decisión tomada por el Tribunal Supremo de los Estados Unidos de América en *Ramos v. Louisiana*, 590 U. S. ____ (2020), enmendando las reglas 112 y 151 de las Reglas de Procedimiento Criminal de 1963, según enmendadas, a los fines de establecer que el veredicto rendido por los jurados deberá ser unánime para que este pueda surtir efecto.

V.

En fin, no vemos cómo la fórmula de requerir unanimidad para la convicción y mayoría para la no culpabilidad (aunque anómala, como señala una mayoría de este Tribunal) contravenga los preceptos consagrados en la Sexta Enmienda de la Constitución federal y lo pautada en *Ramos v. Louisiana, supra.*[106] Lo que realmente resulta anómalo es que esta Curia mediante *fiat judicial* trastoque ese estado derecho so pretexto de una presunta norma o intención de simetría en los veredictos.

**El único posicionamiento que se le puede atribuir a los delegados de la Asamblea Constituyente, tanto por el**

---

[106] Fíjese que, la propuesta de referencia es además cónsona con la lógica de la Sección 19 del Artículo II de nuestra Carta Magna, Art. II, Sec. 19, Const. ELA, LPRA, Tomo 1, en la medida en que la citada cláusula constitucional -- reconociendo "el orden especialmente dinámico del derecho en este campo" -- invita a la Asamblea Legislativa a que expanda los derechos que derivan de nuestra Constitución, así como a que añada aquellos derechos nuevos que adquieran reconocimiento a través de los años. Véase, Farinacci Fernós, *op. cit.*, pág. 358-359, citando a Trías Monge, *op. cit.*, pág. 208. Recuérdese que la intención de la Asamblea Constituyente fue "que no se interpretara la Carta de Derechos como un catálogo exhaustivo de los derechos [de las personas] en Puerto Rico". Trías Monge, *op. cit.*, pág. 208.

Además, y aunque somos conscientes de que en el contexto del juicio por jurado en nuestra jurisdicción "la intención ha sido conceder estrictamente lo que surge de imperativo federal y no más", huelga señalar que nuestra Carta de Derechos, pensada como un todo, es de factura más ancha que la tradicional. Véase, E. L. Chiesa, *Los Derechos de los acusados y la factura más ancha*, 65 REV. JUR. UPR 83, 108-107 (1996). Véase, también, *E.L.A. v. Hermandad de Empelados*, 104 DPR 436, 440 (1975). *Pueblo v. Medina*, 176 DPR 601 (2009).

En esa línea, este Tribunal y cualquier otro poder político, sí puede interpretar nuestra Constitución para otorgar más derechos y protecciones a los individuos, que los reconocidos en la Constitución federal. Véase, J. J. Álvarez, *op. cit.*, pág. 174-175. Por tal razón, cuando entendemos la Constitución como un documento vivo y la leemos en conjunto, nos percatamos de las múltiples instancias en que los derechos de la persona acusada son de factura más ancha. Véase, por ejemplo, E. L. Chiesa, *Los derechos de los acusados y la factura más ancha*, *op. cit.* Por eso, no nos resulta incompatible con todo ello, la forma en que ha quedado el estado de derecho en materia de juicio por jurado y veredictos en el ordenamiento penal puertorriqueño.

**historial del juicio por jurado en nuestro País, como la clara intención recogida en el texto que finalmente se plasmó en la Carta de Derechos, es el de veredictos por mayoría con la concurrencia de al menos nueve (9) miembros del jurado.** De forma que, el supuesto de intención de simetría en los veredictos sobre la cual descansa la conclusión a la que llega la mayoría de mis compañeros y compañera de estrado, **no surge** de las discusiones de los delegados ni de las entrañas mismas del desarrollo del juicio por jurado en nuestra jurisdicción. No se cometió, pues, el error señalado.[107]

VI.

Por los fundamentos antes expuestos, enérgicamente disentimos del resultado al que llega una mayoría de esta Curia en el día de hoy.

Ángel Colón Pérez
Juez Asociado

---

[107] Todo lo anterior cobra más fuerza cuando nos topamos con la determinación del Tribunal Supremo del estado de Oregon en *State v. Ross*, *supra*. El pasado mes de febrero, dicho foro contundentemente dictaminó que, de conformidad con la Sexta Enmienda, la ley de Oregon requiere que el veredicto de culpabilidad para todos los cargos criminales sea por unanimidad, mientras que permite el veredicto de no culpabilidad por el voto de once (11) a uno (1) o el voto de diez (10) a dos (2). Razonó, que lo resuelto cuidadosamente por la Corte Suprema federal en *Ramos v. Louisiana*, *supra*, no dejó dudas en cuanto a que el veredicto de culpabilidad requiere unanimidad, pero que ello en lo absoluto implicó que la Sexta Enmienda prohíba las absoluciones basadas en veredictos no unánimes.